UNITED STATES, Appellee

v.

David G. SPICER JR., Private First Class
U.S. Army, Appellant

No. 12-0414

Crim. App. No. 20090608

United States Court of Appeals for the Armed Forces

Argued October 10, 2012

Decided February 6, 2013

BAKER, C.J., delivered the opinion of the Court, in which
ERDMANN and RYAN, JJ., and COX, S.J., joined.  STUCKY, J., filed
a dissenting opinion.

Counsel

For Appellant:  Major Daniel E. Goldman (argued); Lieutenant
Colonel Jonathan F. Potter and Frank J. Spinner, Esq. (on
brief); Captain E. Patrick Gilman, Captain Matthew T. Grady,
Captain Kristin McGrory, and Captain James S. Trieschmann Jr.

For Appellee:  Captain Steve T. Nam (argued); Lieutenant Colonel
Amber J. Roach (on brief); Major Robert A. Rodrigues and Captain
Frank E. Kostik Jr.

Military Judges:  Debra L. Boudreau and Michael J. Hargis

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Chief Judge BAKER delivered the opinion of the Court.

A general court-martial composed of members was convened in Fort Carson, Colorado. Contrary to his pleas, Appellant was convicted of two specifications of making a false official statement,[1] and two specifications of child endangerment,[2] in violation of Articles 107 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 934 (2006). The adjudged and approved sentence included a dishonorable discharge, confinement

_____

[1] The specific offenses were:

Charge I: Violation of the UCMJ, Article 107

Specification 1: In that PFC David G. Spicer, Jr., U.S. Army, did, at or near Colorado Springs, Colorado on or about 24 July 2008, with intent to deceive, make to Detective John W. Koch, Colorado Springs Police Department, an official statement, to wit: His infant son's [C.S.'s] babysitter (Jessica Landing) failed to return his (David G. Spicer, Jr.'s) son to him and demanded money in exchange for him, or words to that effect, which statement was totally false, and was then known by PFC David G. Spicer, Jr. to be so false.

Specification 2: In that PFC David G. Spicer, Jr., U.S. Army, did, at or near Colorado Springs, Colorado on or about 24 July 2008, with intent to deceive, make to Detective Carlotta Rivera, Colorado Springs Police Department, an official statement, to wit: He had witnessed a possible narcotics transaction and the alleged drug dealers subsequently kidnapped his son, [C.S.], threatening to kill him [C.S.] if he, David G. Spicer, Jr., failed to meet their demands, or words to that effect, which statement was totally false, and was then known by PFC David G. Spicer, Jr. to be so false.

[2] Appellant pleaded guilty to child endangerment by culpable negligence, but the Government proved the charged, greater offense of child endangerment by design.

for ten years, forfeiture of all pay and allowances, and reduction to pay grade E-1.  In a summary disposition, the United States Army Court of Criminal Appeals affirmed the findings and the sentence.  United States v. Spicer, No. ARMY 20090608, 2012 CCA LEXIS 30, at *4, 2012 WL 346653, at *1 (A. Ct. Crim. App. Jan. 31, 2012).  We granted review on the following issue:

> WHETHER THE EVIDENCE IS LEGALLY SUFFICIENT TO SUPPORT THE FINDINGS OF GUILTY OF MAKING FALSE OFFICIAL STATEMENTS UNDER CHARGE I.

## FACTS

From June 17 to July 24, 2008, Appellant left his infant son, C.S., and toddler son, T.S., in his Fort Carson quarters without supervision during the duty day.  C.S. suffered from malnourishment and diaper rash, and T.S. was malnourished and "emotionally injured" because his father "was not caring for him properly."

On July 24, 2008, Appellant realized that C.S. was sick when his neck became swollen and he developed sores on his fingers.  Appellant called the Fort Carson police, but was transferred to the Colorado Springs 911 operator because he was located in that jurisdiction when he made the call.  Appellant requested an ambulance, stating that a babysitter had kidnapped C.S. and had "not tak[en] care of him."  Appellant gave a statement to Detective John W. Koch of the Colorado Springs

Police Department (CSPD) at the police station. Appellant described the babysitter in detail, saying that she had been caring for his children for several months, first at Appellant's residence and then at her home on base. Appellant claimed that the babysitter had returned C.S. to Appellant after demanding a ransom and not properly caring for the child. Detective Koch and CSPD Detective Carlotta L. Rivera had already checked several databases after Appellant's initial statement to a responding patrol officer, and could not locate a record for the babysitter. Detective Koch expressed skepticism about the story, but Appellant maintained that he was telling the truth.

During a break in the questioning, Appellant began to speak with CSPD Detective Rivera outside the interview room. Over the course of two hours, Appellant began to explain that the babysitter story was false and had been fabricated by someone else. Appellant told Detective Rivera that he had witnessed a drug deal, and that an African American drug dealer had threatened him. Appellant claimed that to ensure his silence the drug dealer took C.S. for a two-month period, returning him only once during that time. The drug dealer also supposedly instructed Appellant to remove T.S. from day care. According to Appellant, the drug dealer concocted the story about a babysitter and told Appellant to fake the kidnapping.

4

At some point, the police contacted military law enforcement. About twenty to thirty minutes into their interview of Appellant, the police asked military law enforcement to "get involved" because the alleged kidnapping had occurred on Fort Carson and the babysitter may have been a servicemember or had some connection to the military. The police relayed information to CID Special Agent (SA) Christopher P. Schrock, and worked on a search warrant for Appellant's base quarters. SA Schrock watched a portion of Appellant's interview through live closed-circuit television. The police asked CID for assistance to conduct interviews and search Appellant's residence. SA Schrock performed interviews on base with a CSPD detective, and searched military databases for the alleged babysitter. The CSPD and CID searched the residence, with military police present for security purposes. After the search, CSPD left with items of evidence, including a piece of paper with the alleged babysitter's name written on it. CID opened a joint investigation with the CSPD serving as the lead agency. On July 30, 2008, SA David Simon interviewed Appellant, who admitted fabricating the stories.

## DISCUSSION

Appellant argues that the evidence in this case is legally insufficient to support the findings of guilty of making false official statements. This Court reviews questions of legal

sufficiency de novo. United States v. Winckelmann, 70 M.J. 403, 406 (C.A.A.F. 2011). The test for legal sufficiency is whether, "considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." United States v. Day, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing United States v. Turner, 25 M.J. 324, 324 (C.M.A. 1987)).

Article 107, UCMJ states:

Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct.

The essential elements for the false official statement offense are:

(1) That the accused signed a certain official document or made a certain official statement;

(2) That the document or statement was false in certain particulars;

(3) That the accused knew it to be false at the time of signing it or making it; and

(4) That the false document or statement was made with the intent to deceive.

Manual for Courts-Martial, United States pt. IV, para. 31.b. (2012 ed.) (MCM); see also Article 107, UCMJ. The element at issue in this case is whether the evidence was legally sufficient to find that Appellant's statements were "official."

The interpretive challenge is that the element in question can be read in more than one manner. Moreover, prior case law has left the matter unsettled. There are at least three possible ways to interpret the phrase "Any person . . . who makes any other false official statement . . . ." At its most expansive, the clause could reach any false statement that is in some way official, that is, any statement implicating a military, federal, or state function. At the other extreme, the clause could be read exclusively from the standpoint of the person making the statement, in which case, the speaker must be acting in the line of duty, or the statement must relate to the speaker's official duties in order to fall under Article 107, UCMJ. Finally, the clause could be read to cover statements that implicate the official acts and functions of the hearer as well as the speaker. In such a category, the hearer could be a military member carrying out a military duty or function; a civilian necessarily performing a military function at the time the statement is made, such as a base fireman or base 911 operator; or, a civilian performing a civilian function that would predictably and necessarily require the invocation of or influence a military function. This Court recognized the possibility of this latter category in a footnote in Day, but ultimately did not express a conclusion regarding the reach of

"official statement."[3]  We take the opportunity to do so now, in part, because it is clear from Day that the law could benefit from increased clarity.

For the following reasons, we interpret Article 107, UCMJ, as applying to statements affecting military functions, a phrase derived from Supreme Court case law, and which encompasses matters within the jurisdiction of the military departments and services.  United States v. Rodgers, 466 U.S. 475, 478-79 (1984) (interpreting 18 U.S.C. § 1001's phrase "within the jurisdiction" as differentiating "the official, authorized functions of an agency or department from matters peripheral to the business of that body").  This includes statements based on the standpoint of the speaker, where either the speaker is acting in the line of duty or the statements directly relate to the speaker's official military duties, and statements based on the position of the hearer, when the hearer is either a military member carrying out a military duty or the hearer is a civilian necessarily performing a military function when the statement is made.  This also removes any ambiguity suggested by footnote four in Day; a matter must affect a military function at the time the statement is made.  The putative accused, in other

_____

[3] Day, 66 M.J. at 175 n.4 ("In theory, statements made to an off-base 911 operator might implicate Article 107, UCMJ, in situations where, among other things, there is a predictable and necessary nexus to on-base persons performing official military functions on behalf of the command.").

words, is on fair notice of his or her liability based on an actual connection to military functions, rather than on the fortuity or likelihood that a matter will subsequently be referred to military jurisdiction.

This conclusion is based on the legislative history as well as the purpose of Article 107, UCMJ. First, Article 107, UCMJ, is derived from Articles of War 56 and 57. And, while Article 107, UCMJ, is drafted in a more expansive manner than the Articles of War, these particular Articles of War were specifically intended to address the integrity of military functions, in particular false muster and false returns or omission to render returns.[4] Uniform Code of Military Justice: Hearings on H.R. 2498 Before a Subcomm. of the H. Comm. on Armed Servs., 81st Cong. 1229-30 (1949), reprinted in Index and Legislative History, Uniform Code of Military Justice (1950) (not separately paginated). In other words, the Articles of War did not address every false statement, only those pertaining to military functions.

---

[4] Article of War 57, enacted in National Defense Act Amendments, ch. 227, 41 Stat. 759, 800 (1920) ("Every officer whose duty it is to render to the War Department or other superior authority a return of the state of the troops under his command, or of the arms, ammunition, clothing, funds, or other property thereunto belonging, who knowingly makes a false return thereof shall be dismissed from the service and suffer such other punishment as a court-martial may direct.").

The purpose of Article 107, UCMJ, is also derived from a parallel understanding of its civilian counterpart, 18 U.S.C. § 1001 (2006).[5]  Thus, in 1955, this Court first looked to § 1001 to determine the meaning of Article 107:

> In United States v. Gilliland, the Supreme Court of the United States held that the purpose of the false statement statute [§ 1001] is "to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." We think that also succinctly states the purpose of Article 107.

United States v. Hutchins, 5 C.M.A. 422, 427, 18 C.M.R. 46, 51 C.M.A. (1955) (citation omitted).  This Court's cases since 1955 have continued to refer to § 1001 by analogy to derive the purpose and scope of Article 107, UCMJ.  United States v. Dorsey, 38 M.J. 244, 248 (C.M.A. 1993); United States v. Jackson, 26 M.J. 377, 378 (C.M.A. 1988); United States v. Davenport, 9 M.J. 364, 370 (C.M.A. 1980).  Thus, this Court held

_____

[5] 18 U.S.C. § 1001(a) (2006), states:

> Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully --
>
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
>
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry . . . .

that "the word 'official' used in Article 107 is the substantial equivalent of the phrase 'any matter within the jurisdiction of any department or agency of the United States' found in § 1001." Jackson, 26 M.J. at 378 (citation omitted) (quotation marks omitted). Based on the legislative history of Article 107, UCMJ, and a parallel construction of 18 U.S.C. § 1001, it follows that the purpose of Article 107, UCMJ, is to protect the authorized functions of the military from the perversion which might result from the deceptive practices described in the context of § 1001. 18 U.S.C. § 1001, in turn, protects the official functions of the federal government more broadly, while parallel state statutes would protect state functions.[6]

Thus, as stated in Day, to determine whether a false statement is official, or capable of perverting authorized military functions, "the critical distinction is . . . . whether the statements relate to the official duties of either the speaker or the hearer, and whether those official duties fall within the scope of the UCMJ's reach." Day, 66 M.J. at 174.

---

[6] In the past, this Court's case law has also described Article 107, UCMJ, as "more expansive" than its civilian counterpart. United States v. Teffeau, 58 M.J. 62, 68-69 (C.A.A.F. 2003) (citing United States v. Solis, 46 M.J. 31, 34 (C.A.A.F. 1997)). Our analysis does not rely on such a judgment. On the one hand, Article 107, UCMJ, could be viewed as more expansive because it potentially reaches matters affecting good order and discipline, for which there is no civilian counterpart. On the other hand, 18 U.S.C. § 1001 applies to any agency or department of the United States, whereas Article 107, UCMJ, addresses only false official military statements.

The speaker may make a false official statement "in the line of duty," MCM pt. IV, para. 31.c.(1), or to civilian law enforcement officials if the statement bears a "clear and direct relationship" to the speaker's official duties. Teffeau, 58 M.J. at 69. Alternatively, a statement may be official if the hearer is a military member "'carrying out a military duty' at the time the statement is made." United States v. Cummings, 3 M.J. 246, 247 (C.M.A. 1977) (citing United States v. Arthur, 8 C.M.A. 210, 211, 24 C.M.R. 20, 21 (1957).

Finally, the statements at issue may be official if the hearer is a civilian who is performing a military function at the time the speaker makes the statement. The application of Article 107, UCMJ, here hinges on a critical temporal distinction: the hearer must be performing a military function at the time the statement is made, and not afterwards as a result of the statement. A statement made to a civilian law enforcement official acting in a civilian capacity cannot be said to pervert a military function until the law enforcement officer invokes, involves, or transfers the matter to military authorities.[7]

---

[7] That does not mean that military members are immune from prosecution for false official statements made to civilian officials who are not performing military functions at the time. Rather, it reflects a determination that in a legal context that includes 18 U.S.C. § 1001, Article 107, UCMJ, and relevant state law prohibitions on false statements, whether the appropriate

Applying this legal framework to the present facts and in light of the purposes of Article 107, UCMJ, Appellant's statements were appropriately determined to be false, but were not official.  Appellant did not make the statements in the line of duty.  He did not disobey a specific order to provide for his family, and the statements do not bear a clear and direct relationship to his official duties.  Furthermore, while Appellant's statements ultimately affected on-base persons performing official military functions, Appellant made the statements to civilian law enforcement officials who were not conducting any military function at the time the statements were made.  When Appellant made the statements, the CSPD detectives were not operating a joint investigation with military officials or performing any other military functions.  Thus, the present facts do not fall within the meaning of an official statement for the purposes of Article 107, UCMJ.

Accordingly, we hold that the evidence was not legally sufficient to support the findings of guilty of making false official statements under Charge I.

## DECISION

The decision of the United States Army Court of Criminal Appeals is reversed as to Charge I and the specifications

---

mechanism for charging misconduct is Article 107, UCMJ, or Article 134(3), UCMJ, will depend on the circumstances.

thereunder and the sentence.  Charge I and its specifications are dismissed.  The remaining findings are affirmed.  The record is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for reassessment of the sentence.  Alternatively, a rehearing on the sentence is authorized.

STUCKY, Judge (dissenting):

The majority opinion undertakes to define the term "official statement," as used in Article 107, UCMJ, 10 U.S.C. § 907 (2006), because "the law could benefit from increased clarity." United States v. Spicer, __ M.J. __ (8) (C.A.A.F. 2013). I agree that clarity is desirable. Unfortunately, the majority opinion instead adds more confusion to our admittedly less-than-clear jurisprudence on false official statements.

Our duty in interpreting a statute is to implement the will of Congress, "so far as the meaning of the words fairly permit[]." Sec. & Exch. Comm'n v. Joiner, 320 U.S. 344, 351 (1943).

> As in all statutory construction cases, we begin with the language of the statute. The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent.

Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002) (quotation marks and citations omitted). Whether the statutory language is ambiguous is determined "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997). If the language of the statute is ambiguous, we may resort to the legislative history

"[i]n aid of the process of construction." United States v. Great Northern Ry., 287 U.S. 144, 154 (1932).

Article 107 states: "Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct." 10 U.S.C. § 907 (2006) (emphasis added). By using the phrase "or makes any other false official statement," Congress clearly expressed its will that the statute be broadly interpreted, see United States v. Day, 66 M.J. 172, 174 (C.A.A.F. 2008) (citing United States v. Teffeau, 58 M.J. 62, 68-69 (C.A.A.F. 2003)), and that false official statements are not limited, as the majority insists, to "statements affecting military functions." Spicer, __ M.J. at __ (8).

Even if I were to conclude that the phrase "or makes any other false official statement" is ambiguous, resort to legislative history would not change my belief that Article 107 is not restricted to "statements affecting military functions." The legislative history of Article 107 is very brief, consisting of a short commentary by the drafters:

> [Article 107] consolidates A.W. 56 and 57. It is broader in scope in that it is not limited to particular types of documents, and its application includes all persons subject to this code.

2

The article extends to oral statements, and the mandatory dismissal for officers has been deleted.

Uniform Code of Military Justice:  Hearings on H.R. 2498 Before a Subcomm. of the H. Comm. on Armed Servs., 81st Cong. 1230 (1949), reprinted in Index and Legislative History, Uniform Code of Military Justice (1950) (not separately paginated).

As noted by the majority, Article 107, UCMJ, is derived from Articles of War 56 and 57.[1]  Spicer, __ M.J. at __ (9).  The majority is correct in noting that those "Articles of War were specifically intended to address the integrity of military functions."  Id.  Article of War 56 prohibited an officer from knowingly making a false muster.  See 41 Stat. at 800.  Article of War 57 prohibited an officer whose duty it was to render a report on the state of the troops, arms, ammunition, or other property, from knowingly making a false report.  Id.  But the brief and ambiguous legislative history quoted above is hardly a basis from which to conclude that Congress meant to limit the scope of Article 107 to "statements affecting military functions."

The majority claims that the "purpose of Article 107, UCMJ, is also derived from a parallel understanding of its civilian counterpart, 18 U.S.C. § 1001 (2006)."  Spicer, __ M.J. at __ (10).  Section 1001(a), however, specifically restricts

---

[1] See National Defense Act Amendments, ch. 227, 41 Stat. 759, 800 (1920).

criminality for false statements to those made "in any matter within the jurisdiction of the executive, legislative, or judicial branch of Government of the United States."  Congress chose not to so limit Article 107.  Had it wanted to, it could easily have done so by adding one word -- military -- between "false official" and "statement."  Congress knows how to do this and has done it in other parts of the UCMJ.  See, e.g., Article 94(a), UCMJ, 10 U.S.C. § 894(a) (2006) (subsection (1) prohibits one acting in concert with another from refusing to obey orders with the intent to usurp military authority; subsection (2) prohibits one, acting in concert with another, from revolting with intent to overthrow lawful civil authority).

I conclude that Congress intended Article 107 to criminalize false statements made to civilian law enforcement agents acting in their official capacity.  I would therefore affirm the judgment of the United States Army Court of Criminal Appeals.