**UNITED STATES**

v.

**Senior Airman Jordan C. PASSUT,**
**United States Air Force**

**ACM 37755**

U.S. Air Force Court of Criminal Appeals

16 April 2013

Sentence adjudged 27 August 2010 by GCM convened at MacDill Air Force Base, Florida.

---

Military Judge: W. Thomas Cumbie (sitting alone).

Appellate Counsel for the Appellant: Major Michael S. Kerr; Major Anthony D. Ortiz; Captain Luke D. Wilson; and Dwight H. Sullivan, Esquire.

Appellate Counsel for the United States: Colonel Don M. Christensen; Major Jason M. Kellhofer; Major Rhea A. Lagano; and Gerald R. Bruce, Esquire.

Before ROAN, MARKSTEINER, and HECKER Appellate Military Judges

## OPINION OF THE COURT

HECKER, Judge:

A general court-martial composed of a military judge convicted the appellant, consistent with his pleas, of wrongful use of oxycodone, making false official statements, forgery, unauthorized absence, dereliction of duty, making and uttering worthless checks by dishonorably failing to maintain sufficient funds, and falsely altering a military identification card, in violation of Articles 112a, 107, 123, 86, 92, and 134, UCMJ, 10 U.S.C. §§ 912a, 907, 923, 886, 892, 934.[1] The adjudged sentence consisted of a bad-conduct discharge, confinement for 10 months, and reduction to the grade of E–1. The convening authority approved the sentence as adjudged. On appeal, the appellant asserts three errors: (1) the appellant's false statements were not "official" for purposes of Article 107, UCMJ; (2) the specifications of making and uttering worthless checks and falsely altering a military identification card fail to state offenses because they omit the required terminal element for Article 134, UCMJ, offenses; and (3) he is entitled to relief pursuant to *United States v. Tardif*, 57 M.J. 219 (C.A.A.F.2002), because of this Court's failure to complete its review of this case within the 18–month processing standard established by *United States v. Moreno*, 63 M.J. 129 (C.A.A.F.2006).

*Sufficiency of the False Official Statements*

As part of his scheme to cash checks despite his history of bouncing them, the appellant made several false statements to Ms. CH, an employee of the Armed Forces Bank located in the MacDill Air Force Base (AFB) Exchange. While attempting to cash a check at the bank, the appellant told Ms. CH his military identification card had been damaged by a machine at work as a false explanation for why the social security number and bar code were almost completely scratched off. In fact, he had used a sharp object to scratch this data off of the back of his military identification card so venders could not scan the card to determine his social security number and learn of his history of bad check history. He also gave her another military member's social security number, which she used to determine whether to cash the check the appellant had presented for payment. When the bank system did not return a derogatory code for that social security number, Ms. CH accepted the check and provided the appellant with cash.

The appellant also made similar false statements on multiple occasions to two employees at the Army & Air Force Exchange Service (AAFES) shoppette on MacDill AFB, in a successful effort to cash checks there, many of which subsequently bounced. On those occasions, the appellant selected a few items from the shelves and then wrote checks for a higher amount, receiving cash back from the cashier for the difference.

These statements constituted the factual basis for the five false official statement specifications which the appellant now contests on appeal.[2] We review a military judge's decision to accept a plea of guilty for abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 321 (C.A.A.F.2008) (citation omitted). It is an abuse of discretion for a military judge to accept a guilty plea based on an erroneous view of the law. *Id.* at 322 (citations omitted). This Court reviews de novo questions of law, such as whether the appellant's false statements were "official." *Id.* at 321; *see also United States v. Goodman*, 70 M.J. 396, 400 (C.A.A.F.2011).

---

1. The appellant was acquitted of additional specifications under Articles 107, 92, 123a, and 134, UCMJ, 10 U.S.C. §§ 907, 892, 923a, 934.

2. The appellant also pled guilty to two specifications of making false official statements to a military investigator and his military supervisor. He does not challenge these findings on appeal.

Where the law was settled at the time of trial and has subsequently changed, we apply the law as it exists today. *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F.2011) (citation omitted). If an accused's admissions in the plea inquiry do not establish each of the elements of the charged offense, the guilty plea must be set aside. *United States v. Gosselin*, 62 M.J. 349, 352-53 (C.A.A.F.2006). "In determining the providence of a guilty plea, the scope of review is limited to the record of the trial." *United States v. Roane*, 43 M.J. 93, 99 (C.A.A.F.1995) (citations omitted); *United States v. Joseph*, 11 M.J. 333, 334 (C.M.A.1981).

The military judge instructed the appellant that a statement is "official" if it concerns a "governmental function" and is made to a person who, in receiving it, is discharging the function of his or her particular office. Both parties stipulated that the appellant's statements to the bank and AAFES employees were "official" because they pertained to the appellant's government-issued military identification card and social security number. For the AAFES specifications, the stipulation also stated the cashiers "w[ere] [ ] employee[s] of AAFES, a military organization, and the statements the accused made to [them] related to [their] work duties, namely operating the cash register and accepting payments." During the guilty plea discussion, the military judge stated AAFES is "not quite so much a military organization. But it certainly is an organization that exists on every Air Force base to provide services to military members and their dependents" and "work[s] closely with and provide[s] services to the military." The appellant agreed with the military judge that, given this context, these AAFES employees were "performing a governmental-like function" when they asked the appellant to provide information as part of his effort to cash checks at an AAFES facility, and thus his false statements to them were "official."

The appellant now challenges his guilty plea to these specifications of making false official statements. He contends his multiple false statements to the employees of the on-base bank and AAFES do not satisfy the "official" element of a false official statement charge under Article 107, UCMJ, based on our superior court's recent decision in *United States v. Spicer*, 71 M.J. 470 (C.A.A.F.2013).

That case set forth a framework for determining whether an accused's false statements qualify as "official statements" for purposes of Article 107, UCMJ. Declining to interpret Article 107, UCMJ, as covering a false statement implicating *any* military, federal or state function, the Court found it applies only "to statements affecting *military* functions . . . which encompass[ ] matters within the jurisdiction of the military departments and services." *Id.* at 475 (citing *United States v. Rodgers*, 466 U.S. 475, 478–79, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984)). This decision makes clear that Article 107, UCMJ, only protects the authorized functions of the military from deceptive practices and not the broader official functions of the federal government.[3] *Id.*

 Considering that limitation, in order to determine whether a false statement is "official" for purposes of Article 107, UCMJ, "the critical distinction is . . . whether the statements relate to the official duties of either the speaker or the hearer, and whether those official duties fall within the scope of the UCMJ's reach." *Id.* (citing *United States v. Day*, 66 M.J. 172, 174, (C.A.A.F.2008)). These statements can fall into three categories: (1) where the speaker "make[s] a false official statement in the line of duty . . . or . . . the statement bears a clear and direct relationship to the speaker's official duties"; (2) where the hearer "is a military member carrying out a military duty at the time the statement is made"; or (3) where the hearer "is a civilian who is performing a military function at the time the speaker makes the statement" or is "acting on behalf of military authorities." *Spicer*, 71 M.J. at 474 (internal quotation marks and citations omitted); *United States v. Capel*, 71 M.J. 485, 487 (C.A.A.F.2013).

---

**3.** Under some circumstances, military members who make false statements to civilian officials who are not performing a military function can be prosecuted under Article 134, UCMJ, for a violation of 10 U.S.C. § 1001 or a state law equivalent. *United States v. Spicer*, 71 M.J. 470, 475, n. 7; *United States v. Capel*, 71 M.J. 485, 487 (C.A.A.F.2013).

■ Only the third category has potential applicability here. The question before us is whether the appellant's false statements were made to the civilian AAFES and bank employees while they were acting on behalf of military authorities or in any way performing a military function. If so, and if the appellant's action affected the military function, the statements are "official" for purposes of Article 107, UCMJ, we must then determine whether the appellant's admissions in the plea inquiry are adequate to establish that element of the offense.

AAFES and the Armed Services exchanges have a unique relationship to the military and its installations. The Armed Services exchanges have the "dual mission of providing authorized patrons with articles of merchandise and services and . . . generating . . . a source of funding for [Department of Defense] military [Morale, Welfare, and Recreation] programs." Department of Defense Instruction (DoDI) 1330.9, *Armed Services Exchange Policy*, ¶ 4.1 (7 December 2005). The exchange program on Army and Air Force bases is run by AAFES.[4]

AAFES and the Armed Services exchanges have the legal status of an instrumentality of the United States, and are "entitled to the immunities and privileges" enjoyed by the Federal Government under the Constitution, federal statutes, and federal legal precedents. DoDI 1330.9, ¶ 4.16; Army Regulation (AR) 215–8/Air Force Instruction (AFI) 34–211(*l*), *Army and Air Force Exchange Service Operations*, ¶ 1–11a (5 October 2012). As a joint nonappropriated fund instrumentality "under the jurisdiction of the Chiefs of Staff of the Army and . . . Air Force," AR 215–8/AFI 34–211, ¶¶ 1–9a, 1–10a, AAFES is a "DoD organization supported, in whole or in part by [nonappropriated funds]," [5] DoDI 1330.9, ¶ 3.4. As such, "[i]t acts in its own name to provide or assist Secretaries of the Military Departments in providing programs for military personnel and authorized civilians." DoDI 1330.9, ¶ 3.4.

AAFES is commanded by a Director/Chief Executive Officer (CEO) who reports to a governing council known as a Board of Directors (BOD), comprised of senior military and civilian officials from within the Army and Air Force.[6] The BOD "directs AAFES and is responsible to" the Secretaries of the Army and Air Force, through the respective services' Chiefs of Staff, for, among other duties, determining and approving its basic policies, plans and programs, and deciding its financial plans and goals. AR 215–8/AFI 34–211, ¶ 1–10b. In turn, the AAFES Director/CEO, on behalf of the AAFES BOD, "has primary interdepartmental responsibili-

4. According to its website, the Army & Air Force Exchange Service "is the 47th largest retail organization in the U.S., with an annual revenue of $10B and employing more than 42,000 civilian and [72] military personnel. The Exchange operates department and convenience stores, gas stations, restaurants, theaters, vending and other businesses on military installations in all 50 states, five U.S. territories and more than 30 countries." *See* http://www.shopmyexchange.com/AboutExchange/exchangequickfacts.htm and http://www.shopmyexchange.com/About Exchange/Leadership/index.htm

5. Unlike funds that are derived from congressional appropriations, nonappropriated funds are derived primarily from the sale of goods and services to DoD military and civilian personnel and their family members, and are used to support or provide Morale, Welfare and Recreation (MWR) program. DoDI 1330.9, ¶ 3.3.

6. This includes the Deputy Chief of Staff, Manpower and Personnel, U.S. Air Force (USAF A1); the Deputy Chief of Staff, G–4 (DCS, G–4), U.S Army; Deputy Assistant Secretary of the Army (Personnel Oversight); Deputy Assistant Secre-

tary of the Air Force (Force Management Integration); Military Deputy for Budget, Office of the Assistant Secretary of the Army (Financial Management and Comptroller); Deputy Assistant Secretary of the Air Force (Budget); Europe member (Deputy Commanding General, U.S Army Europe or Vice Commander, U.S. Air Forces in Europe); Commander, Army and Air Force Exchange Service; Pacific Rim (PACRIM) member (Deputy Commander, U.S. Army Pacific or Vice Commander, Pacific Air Forces); Assistant Deputy Chief of Staff, G–1 (DCS, G–1), U.S Army; Director of Services, U.S. Air Force; a general officer representing the Reserve Components for a two-year rotating appointment; Commander, U.S. Army Family and Morale, Welfare and Recreation Command; Director of Budget Operations, Office of the Deputy Assistant Secretary of the Air Force (Budget); Sergeant Major of the Army; Chief Master Sergeant of the Air Force; Army and Air Force members-at-large for a 1–year appointment renewable up to 3 years. Army Regulation 15–110/Air Force Instruction 34–203(*l*), ¶¶ 5a, 8.

ty for the worldwide administration and operation of AAFES activities." AR 215–8/AFI 34–211, ¶ 1–9b.

Military appellate courts have previously considered the relationship between AAFES, its employees, and the military. Our superior court has held a civilian AAFES store detective acts as "an instrument of the military" when stopping a military member suspected of shoplifting, and therefore is required to give rights advisement warnings under Article 31(b), UCMJ, 10 U.S.C. § 831(b). *United States v. Ruiz*, 54 M.J. 138, 140–41 (C.A.A.F.2000); *United States v. Baker*, 30 M.J. 262, 266 (C.M.A.1990); *United States v. Quillen*, 27 M.J. 312, 314 (C.M.A. 1988).

In so holding, our superior court found AAFES "was under the control of military authorities," noting base "exchanges ... are arms of the government deemed by it essential for the performance of governmental functions. They are integral parts of the War Department, [and] share in fulfilling the duties entrusted to it." *Quillen*, 27 M.J. at 314 (omission in original) (citing *Standard Oil Co. of California v. Johnson*, 316 U.S. 481, 485, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942)). The court noted "the control of the exchange lies with the [base] commander and applicable service regulations." *Id.* (citing *Standard Oil Co.*, 316 U.S. at 484–85, 62 S.Ct. 1168). Given this military control, the AAFES detective's position "was not private, but governmental in nature and military in purpose." *Id.* (citing *Standard Oil Co.*, 316 U.S. at 484–85, 62 S.Ct. 1168). This conclusion was bolstered by the fact that the detective's questioning of the military shoplifter "was at the behest of military authorities and in furtherance of their duty to investigate and prosecute crime at the base exchanges." *Id.* at 314–15. This logic was applied in a related context where false statements made to civilian members of an on-base fire department were considered "official" because those personnel were providing on-base services pursuant to the commander's interest in and responsibility for the welfare of residents in base housing over which he exercised command responsibility. *Day*, 66 M.J. at 175.

Applying the *Quillen* and *Day* holdings and logic to this case within the constraints set forth in *Spicer*, we find the appellant's statements to the AAFES cashiers were "official" for purposes of being actionable under Article 107, UCMJ. AAFES remains "governmental in nature and military in purpose" and "under the control of military authorities." The regulation promulgated by the military to set AAFES policy includes specific provisions governing the cashing of checks, the handling of dishonored checks, and requiring patrons to provide identification when writing checks. AR 215–8/AFI 34–211, ¶¶ 6–11, 6–12, 7–4, and 7–6. Like the AAFES store detective, the AAFES cashiers were implementing these "military functions" at the time the appellant made false statements to them. The cashiers were collecting this information at the behest of the military authorities who promulgated the regulation, and one of the responsibilities of the installation commander was to act on reports about patrons who violate their privileges, including by bouncing checks. AR 215–8/ AFI 34–211, ¶ 2–4.

As such, we find the AAFES cashiers were civilians "performing military functions" at the time the appellant made his false statements, and those false statements affected those military functions. We also find the appellant admitted to sufficient facts to establish this element. He agreed AAFES existed on every military base to provide services to military members and dependents and worked closely with the military in doing so. He also agreed the AAFES cashiers' duties included ensuring individuals like himself did not write bad checks at an AAFES facility as they operated the cash registers and accepted payments. We recognize that the military judge told the appellant AAFES was "not quite so much a military organization" and the appellant stated these employees were performing a "governmental-like function" when dealing with him instead of using the "military function" language from *Spicer*. However, when the totality of the guilty plea inquiry is considered in context, we do not find this to be a substantial basis in law or fact requiring the rejection of his

guilty plea as improvident. *Inabinette*, 66 M.J. at 322; *Goodman*, 70 M.J. at 399.

■■■ We find differently for the false statements made by the appellant to an employee of the Armed Forces Bank located within the AAFES exchange complex. Despite its name, this bank is not affiliated with the military. Unlike the AAFES shoppette, the bank is a civilian entity which only happens to be located with an AAFES building. This tenancy relationship does not transform the Armed Forces Bank into an instrumentality of the United States or make its employees' actions "military functions." Accordingly, we set aside and dismiss those specifications.

### Sufficiency of the Article 134, UCMJ, Specifications

■■■ Whether a charged specification states an offense is a question of law that we review de novo. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F.2006) (citations omitted). The failure to allege the terminal element of an Article 134, UCMJ, offense is error. *United States v. Ballan*, 71 M.J. 28, 34 (C.A.A.F.), *cert. denied*, —— U.S. ——, 133 S.Ct. 43, 183 L.Ed.2d 680 (2012) (mem.). In the context of a guilty plea, such an error is not prejudicial when the military judge correctly advises the appellant of all the elements and the plea inquiry shows that the appellant understood to what offense and under what legal theory he was pleading guilty. *Id.* at 34–36. The appellant argues his conviction for dishonorably failing to maintain sufficient funds for the payment of 39 checks valued at more than $2,000 [7] and for wrongfully altering his military identification card should be set aside and dismissed because those specifications did not allege the Article 134, UCMJ, terminal element of being either prejudicial to good order and

discipline (Clause 1) or service discrediting (Clause 2).

During the plea inquiry in the present case, the military judge advised the appellant of each element of the Article 134, UCMJ, offenses at issue, including the terminal element. The military judge defined the terms "conduct prejudicial to good order and discipline" and "service discrediting" for the appellant. The appellant explained to the military judge how his misconduct was service discrediting, given his fraudulent course of conduct, and that his use of other military members as part of his misconduct was prejudicial to good order and discipline. Therefore, as in *Ballan*, the appellant here suffered no prejudice to a substantial right, because he knew under what clause he was pleading guilty and clearly understood how his conduct violated the terminal element of Article 134, UCMJ.

### Sentence Reassessment

■■■ Having found error, we must assess the impact on the sentence and either return the case for a sentence rehearing or reassess the sentence ourselves. Before reassessing a sentence, we must be confident "that, absent the error, the sentence would have been of at least a certain magnitude." *United States v. Doss*, 57 M.J. 182, 185 (C.A.A.F.2002) (citing *United States v. Sales*, 22 M.J. 305, 308 (C.M.A.1986)). A "dramatic change in the 'penalty landscape' " lessens our ability to reassess a sentence. *United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003). Ultimately, a sentence can be reassessed only if we "confidently can discern the extent of the error's effect on the sentencing authority's decision." *United States v. Reed*, 33 M.J. 98, 99 (C.M.A.1991), *aff'd*, 36 M.J. 43 (C.M.A.1992) (mem.). Even within this limit, the Court must determine that a sentence it proposes to affirm is "appropriate," as required by Article 66(c), UCMJ. In short, a

---

7. Through the scheme described above, the appellant made and uttered checks to AAFES entities on MacDill AFB. He also wrote checks to other military members and civilians and lied to them about the state of his finances in a successful effort to persuade them to cash the checks and provide him the proceeds. He also successfully cashed a check he had made out to another military member. These checks were either drawn on his own account or on his wife's account after he forged her signature. After making and uttering each of these checks, the appellant failed to place or maintain sufficient funds in the underlying bank account for their payment, and he knew the checks would not clear the bank. Each was returned by the bank due to insufficient funds.

reassessed sentence must be purged of prejudicial error and also must be "appropriate" for the offense involved. *Sales,* 22 M.J. at 307–08.

■ Here, we have set aside two of the five specifications of making false official statements. Because these two specifications were merged for purposes of sentencing, our decision lowers the maximum sentence faced by the appellant from 63 years and one month to 58 years and one month. Evidence of these two false statements, however, likely would have been admissible as aggravation evidence and considered by the military judge in sentencing, under the "continuing offense doctrine," whereby evidence of similar misconduct that is part of a continuous course of conduct involving similar crimes has been deemed within the ambit of Rule for Courts–Martial 1004(b)(1).[8]

Even if the evidence of these false statements was not admitted at trial, we are confident this minor change in the penalty landscape did not substantially influence the sentence and materially prejudice the appellant's substantial rights. Accordingly, under the facts and circumstances of this case, and considering the relative severity of the charges, we are confident that the military judge would have imposed at least a bad-conduct discharge, confinement for 10 months, and reduction to the grade of E–1.

Furthermore, we have given individualized consideration to this particular appellant, the nature and seriousness of the offenses of which he was convicted, the appellant's record of service, and all other matters properly before the panel in the sentencing phase of the court-martial. *See United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982);

*United States v. Bare,* 63 M.J. 707, 714 (A.F.Ct.Crim.App.2006), *aff'd,* 65 M.J. 35 (C.A.A.F.2007). We find that the adjudged and approved sentence was appropriate in this case and was not inappropriately severe.

### Post–Trial Processing Delays

In *Moreno,* our superior court established guidelines that trigger a presumption of unreasonable delay in certain circumstances, including where, as in this case, appellate review is not completed within 18–months of that docketing. *Moreno,* 63 M.J. at 142. Furthermore, Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers the service courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *Tardif,* 57 M.J. at 225. In a supplemental assignment of error that specifically states he is not raising a due process challenge to the timing of his appellate review, the appellant cites *Tardif* and argues that, because the delay is facially unreasonable under the *Moreno* standards, we should grant relief to the appellant in the form of disapproval of the bad-conduct discharge. Having considered the totality of the circumstances and the entire record, we conclude that relief is not warranted. *United States v. Harvey,* 64 M.J. 13, 24 (C.A.A.F.2006); *Tardif,* 57 M.J. at 224.

### Conclusion

The finding of guilty of Specification 7 and 10 are set aside and dismissed. The remaining findings and the sentence, as reassessed, are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred.[9] Articles 59(a) and 66(c),

8. *See United States v. Moore,* 68 M.J. 491 (C.A.A.F.2010) (mem.) (not plain error to admit evidence of two failed urinalysis tests taken several months outside the charged time period "in light of the continuing offense doctrine and a lack of material prejudice" in a judge alone trial); *United States v. Nourse,* 55 M.J. 229, 231–32 (C.A.A.F.2001) (evidence of additional thefts from a sheriff's office was admissible in a larceny case because it was part of the accused's continuing scheme to steal and was admissible to show the full impact on the victim); *United States v. Shupe,* 36 M.J. 431, 436 (C.M.A.1993) (evidence of drug transactions outside the pled-to

conspiracy was admissible to show the charged misconduct was not an "isolated transaction" and "the continuous nature of the charged conduct and its full impact on the military community"); *United States v. Ross,* 34 M.J. 183, 187 (C.M.A.1992) (permissible to show the accused had altered 20–30 enlistment aptitude tests, even though he pled guilty to altering only four, as it shows his "pattern" of conduct and the harm suffered by the Army).

9. Through the issuance of this decision, we hereby vacate our prior decision in this case, issued on 12 March 2013.

UCMJ. Accordingly, the findings as modified, and the sentence as reassessed, are AFFIRMED.