UNITED STATES, Appellee

v.

Jordan C. PASSUT, Senior Airman
U.S. Air Force, Appellant

No. 13-0518

Crim. App. No. ACM 37755

United States Court of Appeals for the Armed Forces

Argued October 8, 2013

Decided January 8, 2014

BAKER, C.J., delivered the opinion of the Court, in which
ERDMANN and RYAN, JJ., and EFFRON, S.J., joined.  STUCKY, J.,
filed a separate opinion concurring in the result.

Counsel

For Appellant:  Major Matthew T. King (argued); Dwight H.
Sullivan, Esq.

For Appellee:  Major Rhea A. Lagano (argued); Lieutenant Colonel
C. Taylor Smith and Gerald R. Bruce, Esq. (on brief).


Military Judge:  W. Thomas Cumbie


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Chief Judge BAKER delivered the opinion of the Court.

A general court-martial composed of a military judge convicted Appellant, consistent with his pleas, of wrongful use of oxycodone, making false official statements, forgery, unauthorized absence, dereliction of duty, making and uttering worthless checks by dishonorably failing to maintain sufficient funds, and falsely altering a military identification card in violation of Articles 112a, 107, 123, 86, 92, and 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 907, 923, 886, 892, 934 (2012). The adjudged and approved sentence included a bad-conduct discharge, ten months of confinement, and reduction to grade E-1. The United States Air Force Court of Criminal Appeals (CCA) set aside and dismissed two specifications of making false official statements and affirmed the remaining findings and the existing sentence as reassessed. United States v. Passut, 72 M.J. 597, 605-06 (A.F. Ct. Crim. App. 2013).

We granted review on the following issue:

> WHETHER A STATEMENT MADE TO AN AAFES EMPLOYEE FOR THE PURPOSE OF CASHING A WORTHLESS CHECK SATISFIES THE "OFFICIAL" ELEMENTS OF A FALSE OFFICIAL STATEMENT [CHARGE].

We conclude that the statements made by the Appellant to the Army and Air Force Exchange Service (AAFES) employees were official for the purposes of Article 107, UCMJ.

BACKGROUND

On several occasions in October and November 2009, Appellant attempted to cash checks at the AAFES shopette at MacDill Air Force Base in Florida. Each time he used a similar procedure. The check cashing process required an AAFES employee to either scan an identification card or enter a Social Security Number into a database to check for a history of dishonored checks. Appellant presented his Common Access Card (CAC) to the civilian AAFES employee. The bar code and Social Security Number on the back of the card were so severely scratched that the card could not be scanned and the number was illegible. Appellant told the employee that the card had been damaged in the washer and dryer or by a machine at work. In fact, Appellant had scratched the card himself so that the employee would not be able to access his record of writing insufficient checks. Appellant then provided the employee with another servicemember's Social Security Number and proceeded to write checks for groceries and cash back. On other occasions, when asked by a different AAFES employee for his CAC, Appellant verbally delivered a false Social Security Number in order to receive cash back on purchases. Appellant also made similar statements regarding his Social Security Number and scratched CAC to a teller at a branch of the Armed Forces Bank, a civilian bank, located within the AAFES facility.

Appellant was charged with numerous offenses including wrongful use of oxycodone, forgery, unauthorized absence, dereliction of duty, making and uttering worthless checks, falsely altering a military identification card, and making false official statements.[1]  In a stipulation of fact presented

---

[1] The specific offenses at issue are:

Charge II: Violation of the UCMJ, Article 107

Specification 1:  In that SENIOR AIRMAN JORDAN C. PASSUT, United States Air Force, 6th Maintenance Squadron, MacDill Air Force Base, Florida, did, at or near MacDill Air Force Base, Florida, on divers occasions between on or about 2 November 2009 and on or about 5 November 2009, with intent to deceive, make to Ms. Brenda Braaten, an official statement to wit:  my social security number is . . ., or words to that effect, which statement was totally false, and was then known by the said Senior Airman Passut to be so false.

Specification 5:  In that SENIOR AIRMAN JORDAN C. PASSUT, United States Air Force, 6th Maintenance Squadron, MacDill Air Force Base, Florida, did, at or near MacDill Air Force Base, Florida, on divers occasions between on or about 25 October 2009 and on or about 5 November 2009, with intent to deceive, make to Mr. William Rosenblatt, an official statement, to wit:  my social security number is . . ., or words to that effect, which statement was totally false, and was then known by the said Senior Airman Passut to be so false.

Specification 9:  In that SENIOR AIRMAN JORDAN C. PASSUT, United States Air Force, 6th Maintenance Squadron, MacDill Air Force Base, Florida, did, at or near MacDill Air Force Base, Florida, on or about 2 November 2009, with intent to deceive, make to Ms. Brenda Braaten, an official statement to wit:  the Social Security Number on my Common Access Card is scratched out because the card went through the washer and dryer, or words to that effect, which statement was false in that the said Senior Airman Passut deliberately scratched his ID card using a means other than

to the military judge, Appellant agreed that the statements to the AAFES employees had been official statements. The stipulation stated that the cashier "was an employee of AAFES, a military organization, and the statements the accused made to her related to her work duties, namely operating the cash register and accepting payments."

The Appellant pled guilty to a number of charges including, and relevant to this opinion, seven specifications of making false official statements in violation of Article 107, UCMJ. Three of these specifications involved statements to AAFES employees. During the providence inquiry, the military judge stated that: "The stipulation said that AAFES is a military organization. It really is not quite so much a military organization. But it certainly is an organization that exists on every Air Force base to provide services to military members and their dependents." The military judge then asked Appellant if he agreed that one of AAFES's duties is to "ensure that the person for whom they cash a check doesn't have a bunch of other bad checks and that sort of thing with the BX." Appellant agreed. The military judge went on to ask whether, since AAFES "work[ed] closely with and provid[ed] services to the military," Appellant was "satisfied in [his] own mind that in requesting

---

a washer or dryer, and was then known by the said Senior Airman Passut to be so false.

that information from [him] that they were performing a governmental-like function."  Again, Appellant agreed.

Appellant was sentenced to ten months of confinement, a bad-conduct discharge, and reduction to grade E-1.  On appeal, the Air Force Court of Criminal Appeals dismissed two of the false official statement charges, those made to the bank employee, on the grounds that "[d]espite its name, this bank is not affiliated with the military.  Unlike the AAFES shopette, the bank is a civilian entity which only happens to be located with an AAFES building."  Passut, 72 M.J. at 604.  The Court of Criminal Appeals otherwise affirmed the remaining findings and the sentence.  Id. at 605-06.  With respect to the AAFES charges, the Court found "AAFES remains 'governmental in nature and military in purpose' and 'under the control of military authorities.'"  Id. at 603 (citation omitted).

Appellant now challenges his Article 107, UCMJ, convictions on the ground that cashing a check is not a military function and therefore AAFES, like the Armed Forces Bank, was not performing a military function for the purposes of Article 107, UCMJ.  Thus, according to Appellant, there is a substantial basis to question his plea as a matter of law and fact.

DISCUSSION

A military judge's acceptance of a guilty plea is reviewed for an abuse of discretion. United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008). A ruling based on an erroneous view of the law constitutes an abuse of discretion. Id. The test for an abuse of discretion is whether the record shows a substantial basis in law or fact for questioning the plea. United States v. Schell, 72 M.J. 339, 345 (C.A.A.F. 2013).

Article 107, UCMJ, states that: "Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct." Manual for Courts-Martial, United States pt. IV, para. 31.a. (2012 ed.) (MCM) (emphasis added). In United States v. Spicer, this Court set out a framework for determining whether statements qualify as official for the purposes of Article 107, UCMJ, as distinct from those that might be charged under 18 U.S.C. § 1001(c) (2012) or state law. 71 M.J. 470 (C.A.A.F. 2013). We found that official statements are those that affect military functions, "a phrase derived from Supreme Court case law, and which encompasses matters within the jurisdiction of the military departments and services." Id. at 473. These include statements based on the standpoint of the

7

speaker, either acting in the line of duty or concerning matters directly related to the speaker's official military duties.  Id. These also include, most significantly for this case: "[S]tatements based on the position of the hearer, when the hearer is either a military member carrying out a military duty or the hearer is a civilian necessarily performing a military function when the statement is made."  Id.  Appellant argues, and we agree, that Appellant was not performing a military duty when writing a personal check for groceries and cash at AAFES. The dispositive question is, therefore, whether the hearer, a civilian AAFES employee cashing checks, qualifies as a civilian necessarily performing a military function.

Appellant argues that this case should hinge on the nature of the function itself rather than what entity was carrying out that function.  Thus, in Appellant's view, the applicability of Article 107, UCMJ, should not turn on whether the person in question is cashing a check at AAFES or a 7-Eleven.  We disagree.  AAFES is not 7-Eleven, and that matters, as Article 107, UCMJ, is intended to protect the integrity of governmental functions, specifically military functions.  Therefore, the unique nature of AAFES and its relationship to the military are integral to the determination of whether its employees perform a military function or not for the purposes of Article 107, UCMJ.

8

AAFES is a joint, nonappropriated fund instrumentality of the Department of Defense (DoD). Dep't of Defense Dir. 1330.9, Armed Services Exchange Policy paras. 3.4, 4.1 (Dec. 7, 2005). Among other things, AAFES generates earnings used to support Morale, Welfare, and Recreation (MWR) programs for the Armed Services. Id. at para. 4.1. This same DoD Directive states that the Armed Services exchange program is "vital to mission accomplishment and forms an integral part of the non-pay compensation system for active duty personnel". Id. The Exchange is controlled by a board of directors, with board members established by a joint service regulation and consisting entirely of individuals affiliated with the Army and Air Force. Dep't of the Army, Reg. 15-110/Dep't of the Air Force, Instr. 34-203(I), Boards, Commissions, and Committees, Board of Directors, Army and Air Force Exchange Service para. 5 (July 10, 2009). The board is responsible to the Secretaries of the Army and Air Force through the service Chiefs of Staff. Id. at para. 8. Its duties include determining and approving basic policies and programs related to AAFES and setting financial plans and goals. Id.

Though AAFES is not a uniformed military activity, members of the Armed Forces make the key decisions concerning its operation and AAFES profits are fed back into the Army and Air Force in order to fund service-related MWR programs. A joint

9

Army/Air Force directive outlines the purpose, objectives, organization and legal status of AAFES.[2]  Dep't of the Army, Reg. 215-8/Dep't of the Air Force Instr. 134-211(I), Morale, Welfare, and Recreation, Army and Air Force Exchange Service Operations (Oct. 5, 2012).

The Army and Air Force also participate in the regulation of fraud and loss prevention in AAFES facilities.  There are Army and Air Force regulations dictating procedures for cashing checks in AAFES facilities and for processing dishonored checks. Id. at paras. 6-11, 6-12.  Military personnel who do not make timely restitution on bad checks are reported to their unit, garrison, or installation commanders.  Id. at para 7-6(b). Commanders have the authority to suspend or revoke AAFES privileges and there is a mandatory six-month suspension for anyone who intentionally presents bad checks.  Id. at para. 7-6(e).

The regulatory conclusion that AAFES supports and performs a governmental and military function is further supported in case law.  In 1942, the United States Supreme Court determined

---

[2] AAFES is an instrumentality of the United States, entitled to the immunities and privileges shared by the federal government under the Constitution, federal statutes, federal legal precedents, established principles of international law, and international treaties and agreements.  Dep't of the Army, Reg. 215-8/Dep't of the Air Force Instr. 134-211(I), Morale, Welfare, and Recreation, Army and Air Force Exchange Service Operations para. 1-11(a). (Oct. 5, 2012).

that the exchange was a government entity.  It stated that post exchanges were the "arms of Government deemed by it essential for the performance of governmental functions."  Standard Oil Co. of Cal. v. Johnson, 316 U.S. 481, 485 (1942).

This Court has also held that an AAFES store detective's duties were sufficiently military in nature as to require Article 31, UCMJ, 10 U.S.C. § 831, rights warning.  United States v. Ruiz, 54 M.J. 138, 140-41 (C.A.A.F. 2000); United States v. Baker, 30 M.J. 262, 266-67 (C.M.A. 1990); United States v. Quillen, 27 M.J. 312, 314-15 (C.M.A. 1988).  In Quillen, we found that an AAFES store detective was required to advise a suspect of his rights under Article 31, UCMJ, before questioning him about shoplifting.  27 M.J. at 314.  The decision was based on the fact that the store investigator "in a very real and substantial sense acted as an instrument of the military" and that the organization that employed her (AAFES) and directed her actions was under the control of military authorities.  Id.  A store detective at a base exchange was therefore not a private employee but rather had assumed duties that were "governmental in nature and military in purpose."  Id.

In addition, in United States v. Day, this Court determined that false statements made to civilian firemen who were members of a base fire department qualified as false official statements.  66 M.J. 172, 175 (C.A.A.F. 2008).  The fact that

11

statements were made to a civilian or military member was not essential in determining their official nature.  Rather, the critical distinction was "whether the statements related to the official duties of either the speaker or the hearer, and whether those official duties fall within the scope of the UCMJ's reach."  Id. at 174.

In counterpoint, this Court ruled in both Spicer and United States v. Capel that statements made to civilian police officers were not official statements for the purpose of Article 107, UCMJ.  Spicer, 71 M.J. at 475; United States v. Capel, 71 M.J. 485, 487 (C.A.A.F. 2013).  The statements in question were not pursuant to any military duties on the appellant's part, nor were the civilian police officers acting in conjunction with or on behalf of military authorities at the time the statements were made.  Spicer, 71 M.J. at 475; Capel, 71 M.J. at 487.

In short, these cases define "official" in a manner that encompasses civilians working for an organization or entity serving a military function.  AAFES, through millions of dollars in annual contributions and a continuous presence on bases, installations, and other military sites across the world, plays a significant role in maintaining servicemembers' morale and welfare while also providing essential services.  As such, the organization and its employees clearly serve a military function for the purposes of Article 107, UCMJ.

As a result, Appellant's argument that the act of cashing a check at AAFES is no different than doing the same at the Armed Forces Bank is not persuasive. The critical distinction between military and civilian highlighted in Spicer and Day is evident here and is well illustrated by the factual distinctions between the Article 107, UCMJ, charges in this case as found by the CCA. The Armed Forces Bank is a privately owned bank that caters to members of the military but, unlike AAFES, the Army and Air Force are in no way involved in the management, operations, or setting of policies. Neither do the bank's earnings accrue to the benefit of service personnel. See id. Although Appellant is a member of the military, he was not acting in that capacity when attempting to cash his personal check at the bank. The teller was a civilian as well. Aside from the bank branch's physical presence on the base, nothing here hinted at a military function. In contrast, AAFES -- which is governed by service regulations and whose profits are fed back into the military -- has a closer and more intricate relationship to the armed forces, a relationship sufficient to establish a military function.

Therefore, we hold that the AAFES employee cashing Appellant's check was performing a military function and that statements made to that employee qualify as official statements for the purposes of Article 107, UCMJ. As a result, as a matter

of law, the military judge did not abuse his discretion in accepting Appellant's guilty plea to violating Article 107, UCMJ.

We also conclude that that the military judge did not abuse his discretion in accepting the plea as a matter of fact. During the providence inquiry, Appellant agreed with the military judge's statement that AAFES "is not quite so much a military organization. But it certainly is an organization that exists on every Air Force base to provide services to military members and their dependents." He also concurred when the military judge asked if, since the AAFES employees "work closely with and provide services to the military, are you satisfied in your own mind that in requesting that information from you that they were performing a governmental-like function?" In addition, in the stipulation of fact, Appellant stipulated that both of the cashiers to whom Appellant had provided a false Social Security Number, Ms. Braaten and Mr. Rosenblatt, were employees "of AAFES, a military organization, and the statements the accused made to him [her] related to his [her] work duties, namely operating the cash register and accepting payments." Given these admissions, we also find that Appellant agreed to sufficient facts to establish the official element of Article 107, UCMJ.

DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

United States v. Passut, No. 13-0518/AF

STUCKY, Judge (concurring in the result):

Appellant's statements to an AAFES civilian cashier cashing his check were false official statements within Article 107, UCMJ, 10 U.S.C. § 907 (2012), under either the majority opinion or my dissent in United States v. Spicer, 71 M.J. 470, 475–76 (C.A.A.F. 2013) (Stucky, J., dissenting).  In this case, the AAFES cashier was performing an official function under government authority and pursuant to government regulations when she cashed Appellant's check.  That is all that is required.  I concur in affirming the judgment of the United States Air Force Court of Criminal Appeals.