# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, HERRING, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**First Lieutenant LARRY D. BARTELLE,**
**United States Army, Appellant**

ARMY 20130420

Headquarters, Joint Readiness Training Center and Fort Polk
Patricia Lewis, Military Judge
Colonel Samuel A. Schubert, Staff Judge Advocate

For Appellant: Colonel Kevin Boyle, JA; Major Yolanda McCray Jones, JA; Captain Brian D. Andes, JA (on brief).

For Appellee: Major A.G. Courie III, JA; Major John K. Choike, JA; Captain Robyn M. Chatwood, JA (on brief).

12 November 2015

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MULLIGAN, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of making a false official statement and one specification of willful damage of personal property in violation of Articles 107 and 109, Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 909 (2006) [hereinafter UCMJ]. The military judge convicted appellant, contrary to his pleas, of willfully disobeying the lawful order of a superior commissioned officer; three specifications of making a false official statement; two specifications of willful damage of personal property; three specifications of assault consummated by a battery; and communicating a threat in violation of Articles 90, 107, 109, 128, and

134, UCMJ.[1]  The military judge sentenced appellant to a dismissal and four years' confinement.  The convening authority approved the sentence as adjudged and also waived automatic forfeitures of all pay and allowances for a period of six months with the direction they be paid to appellant's dependents.  The accused was credited with 652 days toward confinement.

This case is before the court for review under Article 66, UCMJ.  Appellant raises three assignments of error, two of which merit discussion and one of which merits relief.[2]  Finally, although not raised by appellant, we find the evidence supporting his conviction for willfully disobeying the lawful order of a superior commissioned officer is not factually sufficient and we will set it aside in our decretal paragraph.

## FACTS

Appellant and Staff Sergeant (SSG) R.A.S. engaged in a brief relationship that became abusive once SSG S discovered she was pregnant.  During an argument with SSG S, appellant hit and damaged a light fixture owned by SSG S.  The light fixture cut appellant's finger, requiring him to seek medical treatment at an on post medical facility.  Appellant informed the intake nurse that he cut his finger with a knife.  He told his treating physician that he cut the finger on a lawn mower blade.  Based on these facts, appellant pled guilty to two specifications of making a false official statement.

After learning of appellant's abuse of SSG S, appellant's company commander gave him an order to not contact SSG S for any reason via any means of communication.  At trial, the company commander testified he learned of appellant's breach of the no-contact order from trial counsel.  SSG S testified appellant had contacted her after he received the no-contact order.  Neither the company commander nor SSG S provided any further details about when or where the contact was made, in what form the contact was made, or the nature of the contact made.  In addition, the company commander apparently had no personal knowledge of the contact, only the assurances of the trial counsel that appellant had, in fact, violated his no-contact order.

---

[1] The military judge acquitted the appellant of one specification of willfully disobeying the lawful order of a superior commissioned officer, two specifications of causing death or injury of an unborn child, one specification of rape, two specifications of stalking, six specifications of assault consummated by battery, three specifications of kidnapping, and one specification of communicating a threat (Article 90, 199a, 120, 120a, 128, and 134, UCMJ).

[2] Appellant also raises several issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), none of which merit discussion or relief.

During an interview with a military police investigator, appellant answered "No," or words to that effect, when asked whether he had a sexual relationship with SSG S; if he knew who SSG S was pregnant by; and if he had ever threatened to kill or hit SSG S during any of their arguments.

## LAW AND DISCUSSION

### 1. *Providency of Appellant's Guilty Plea to making False Official Statements*

Appellant avers that the military judge abused her discretion by accepting his plea to making false official statements. He asserts that these statements were not "official" within the meaning of Article 107 because the intake nurse and the treating physician "were not acting in conjunction with or on behalf of military authorities at the time appellant made his statements."

"We review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo." *United States v. Murphy*, 74 M.J. 302, 305 (C.A.A.F. 2015) (quoting *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). A guilty plea will only be set aside if we find a substantial basis in law or fact to question the plea. *Id.* The court applies this "substantial basis" test by determining whether the record raises a substantial question about the factual basis of appellant's guilty plea or the law underpinning the plea. *Inabinette*, 66 M.J. at 322.

In *United States v. Spicer*, 71 M.J. 470 (C.A.A.F. 2013), our superior court interpreted Article 107, UCMJ "as applying to statements affecting military functions." *Spicer*, 71 M.J. at 473, (citing *United States v. Rodgers*, 466 U.S. 475, 478-79 (1984)). This includes statements based on the speakers' position, either while in the "line of duty" or relating to the speaker's official military duties. *Spicer*, 71 M.J. at 473. It also includes statements based on the position of the hearer, when the hearer is a military member carrying out military duties or "a civilian necessarily performing a military function when the statement is made." *Id.*

During the providence inquiry appellant admitted he was in a medical facility "on post" at Fort Jackson, South Carolina when he made the false statements and that the "military nurse" was "in the discharge of her functions regarding her job as a nurse." Appellant also admitted that the doctor was "in the official discharge of his duties when [appellant] spoke with him." Based on these admissions, we find no substantial basis in law or fact to question appellant's plea to making an "official" statement. *Inabinette*, 66 M.J. at 322; *see United States v. Day*, 66 M.J. 172, 175 (C.A.A.F. 2008) (statements made to civilian personnel who were members of a base fire department charged with performing an on-base military function were held to be official.). Accordingly, we find that the military judge did not abuse her discretion in accepting appellant's plea of guilt. *Murphy*, 74 M.J. at 305.

### 2. Unreasonable Multiplication of Charges

Contrary to his pleas, appellant was charged with three additional specifications of making a false official statement, all three of which occurred during a single interview by the military police investigator. Specifications 1, 2, and 3 of Charge VIII were based on these answers.

We review claims of unreasonable multiplication of charges under an abuse of discretion standard. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012) (citing *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004)). "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts-Martial (R.C.M.) 307(c)(4). We consider five factors to determine whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?;
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;
>
> (4) Does the number of charges and specifications [unreasonably] increase [the] appellant's punitive exposure?;
>
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Quiroz*, 55 M.J. 334, 338-89 (C.A.A.F. 2001) (internal citation and quotation marks omitted) (internal alteration reflects the holding in *Quiroz* that "unreasonably" will be utilized instead of "unfairly").

On balance, we find the *Quiroz* factors weigh in appellant's favor. First, appellant did object to the unreasonable multiplication of these specifications during trial. Second, considering appellant's false statements were made during a single interview with the same investigator regarding appellant's relationship with SSG S., the first three specifications of Charge VIII are not three distinctly separate criminal acts. Rather, appellant's three 'exculpatory no' answers comprise one false official statement offense. Further, convicting appellant three times for what was a single offense exaggerates his criminality. Although the military judge merged the three specifications in Charge VIII for purposes of sentencing, thereby preventing appellant from being unfairly subjected to an increase in punitive exposure and

although we find no prosecutorial overreaching or abuse in drafting charges, we conclude there was an unreasonable multiplication of specifications for findings, as well as sentencing, in this case. *See Campbell*, 71 M.J. at 23 (noting one or more factors may be sufficiently compelling, without more, to warrant relief); *see also United States v. Wright*, 44 M.J. 739, 741 (Army Ct. Crim. App. 1996) ("The government's election to charge each of the four 'particulars' in the appellant's two false official statements as a separate specification was an unreasonable multiplication of charges which must be corrected.") (citations omitted). We will consolidate these specifications in our decretal paragraph below.

### 3. Factual and Legal Sufficiency

In accordance with Article 66(c), UCMJ, we review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324-35 (C.M.A. 1987); *see also Jackson v. Virginia*, 443 U.S. 307, 319; *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are [ourselves] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325.

In this case, having completed our review and in consideration of the entire record, we find that appellant's conviction for disobeying his company commander's no-contact order is not factually sufficient. There is some evidence that appellant and SSG S did have some contact after appellant received the order. According to SSG S, she contacted appellant regarding a tax issue they had previously discussed and medical questions that were pertinent to her pregnancy. In neither situation did SSG S indicate that appellant *willfully* contacted her or communicated with her in violation of the order, only that she contacted him to discuss these matters and he presumably responded to her. In addition, the company commander testified that on at least one occasion, and possibly more, appellant properly informed him that he had had some contact with SSG S.

Based on the evidence contained in the record, even making allowances for not having personally observed the witnesses, we are not convinced beyond a reasonable doubt that appellant is guilty of *willfully* disobeying the no-contact order his company commander gave him. *Turner*, 25 M.J. at 325.

**CONCLUSION**

Upon consideration of the entire record, submission by the parties, and those matters personally raised by appellant pursuant to *Grostefon*, Specifications 1, 2, and 3 of Charge VIII are consolidated into a single amended Specification, to read as follows:

> In that [appellant], U.S. Army, did, at or near Ft. Jackson, South Carolina, on or about 5 May 2012, with intent to deceive, make to Investigator P.S.M., official statements, to wit: "no," or words to that effect in response to Investigator M's question whether [appellant] had a sexual relationship with Staff Sergeant R.A.S.; Investigator M's question whether [appellant] knew who Staff Sergeant R.A.S. was pregnant by; and " Investigator M's question whether [appellant] had ever threatened to kill or hit Staff Sergeant R.A.S. during any of their arguments, which statements were totally false, and were then known by the said [appellant] to be so false.

The findings of guilty to Specification 1 of Charge VII and Specifications 2 and 3 of Charge VIII are set aside and those specifications are DISMISSED. The finding of guilty to Specification 1 of Charge VIII, as so amended, is AFFIRMED. The remaining findings of guilty are AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

Applying the principles of *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986) and the factors set forth in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we conclude that we can confidently reassess appellant's sentence without returning this case for a sentence rehearing

In evaluating the *Winckelmann* factors, our decision does not result in a dramatic change in the penalty landscape despite the fact that appellant's maximum exposure to confinement is reduced by five years. *Winckelmann,* 73 M.J. at 15-16. Because appellant was sentenced by a military judge as opposed to members, we are more likely to be certain of how the military judge would have sentenced appellant had she acquitted him of violating the no contact order. *Winckelmann,* 73 M.J. at 16. In addition, this court reviews the records of a substantial number of courts-martial involving domestic abuse and we have extensive experience with the level of sentences imposed for similar offenses to those committed by appellant. *Id.*

Finally, the remaining offenses still capture the gravamen of appellant's criminal conduct. *Id.* Appellant remains convicted of assaulting SSG S on several occasions, damaging her property, threatening her and then making false statements about circumstances surrounding their relationship. Based on the record, any

6

contact between appellant and SSG S that the military judge may have found to occur after the no-contact order was given was not the primary source of the fears and concerns SSG S expressed during her sentencing testimony and likely was not the primary basis for the military judge's sentence. Based on the entire record and appellant's course of conduct, we can conclude the military judge would have imposed a sentence of at least that which was adjudged, and accordingly we AFFIRM the sentence.

Judge HERRING and Judge BURTON concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court