# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, M.C. HOLIFIELD, A.Y. MARKS**
Appellate Military Judges

### UNITED STATES OF AMERICA

v.

### JAVON C. ASHWORTH
### SEAMAN APPRENTICE (E-2), U.S. NAVY

### NMCCA 201500028
### GENERAL COURT-MARTIAL

**Sentence Adjudged:** 26 September 2014.
**Military Judge:** CAPT R.B. Blazewick, JAGC, USN.
**Convening Authority:** Commander, Navy Region Southeast, Naval Air Station, Jacksonville, FL.
**Staff Judge Advocate's Recommendation:** CDR N.O. Evans, JAGC, USN.
**For Appellant:** CDR Glenn Gerding, JAGC, USN.
**For Appellee:** LT James M. Belforti, JAGC, USN.

**3 September 2015**

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a general court-martial, found the appellant guilty, pursuant to his pleas, of two specifications of sexual abuse of a child, one specification of possession of child pornography, and one specification of solicitation to distribute child pornography, in violation of Articles 120b and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920b and 934. The adjudged sentence included 15 months' confinement, reduction to pay grade E-1, a $3,000.00 fine, and a bad-conduct discharge. The convening

authority approved the sentence as adjudged but, pursuant to a pretrial agreement, disapproved the fine to the extent it exceeded $500.00.

On appeal, the appellant alleges that his guilty plea to Charge II, Specification 4, solicitation to distribute child pornography, was not provident. The appellant argues the military judge failed to elicit facts to establish the minor girls that the appellant solicited were aware they were part of a criminal venture. After careful examination of the record of trial and the pleadings of the parties, we disagree. The findings and the sentence are correct in law and fact, and we find no error materially prejudicial to the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ.

## Background

In November 2013, the appellant, a 21-year-old male, resumed his teenage practice of meeting underage girls online and "sexting"[1] with them. Using social networking websites the appellant initiated communication with girls under the age of 18. Sometimes the appellant introduced himself to girls using an account that reflected his true identity as a 21-year-old male Sailor named Jovon. Alternatively, the appellant used an account through which he impersonated a 16-year-old girl with a name such as Ashley. If a conversation progressed with a girl, the appellant would request her cell phone number or user name on an application which is used to exchange text messages and photos via smart phone or computer. The appellant then transmitted photographs of himself naked, or if he were posing as a teenage girl, photographs of young women engaging in sexually explicit conduct. The appellant requested that the girls receiving the images reciprocate with photos of themselves unclothed or "doing racy things, slowly stripping and—and the like, things that would constitute child pornography."[2] Many of these underage girls the appellant solicited responded by sending one or more photos of themselves, often fully or partially naked and/or touching themselves sexually.

---

[1] Sexting has been defined as "'the practice of sending or posting sexually suggestive text messages and images, including nude or semi-nude photographs via cell phones or over the Internet.'" Ronak Patel, "Taking it Easy on Teen Pornographers: States Respond to Minors' Sexting," 13 J. High Tech. L. 574, 575 (2013) (quoting *Miller v. Skumanick*, 605 F. Supp. 2d 634, 637 (M.D. Pa. 2009)).

[2] Record at 55.

## Standard of Review

A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion. *United States v. Inabinette,* 66 M.J. 320, 322 (C.A.A.F. 2008). The test for abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea. *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citing *United States v. Passut*, 73 M.J. 27, 29 (C.A.A.F. 2014)). Setting aside a guilty plea requires "a substantial conflict between the plea and the accused's statements or other evidence . . . . The mere possibility of a conflict is not sufficient." *Id*. (quoting *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014)) (additional citation and internal quotation marks omitted).

## Solicitation to Commit an Offense

The first element of soliciting another to commit an offense is, "[t]hat the accused solicited or advised a certain person or persons *to commit a certain offense* under the code other than the four offenses named in Article 82." [3] MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 105b(1) (emphasis added). Solicitation exists only in relation to another, stand-alone offense. Committing solicitation appears to involve nothing more than making a nefarious request or suggestion, but the recipient must be capable of committing a separate criminal offense prohibited by the UCMJ.

In 1957, the United States Court of Military Appeals (CMA) first analyzed a solicitor's culpability for solicitation in light of the solicitee's potential culpability for the solicited offense. *United States v. Oakley*, 23 C.M.R.197 (C.M.A. 1957). In *Oakley*, the appellant asked two civilian co-workers to purchase rat poison for him, a normally lawful act. *Id.* at 198. However, when pressed, the appellant admitted to both co-workers he sought the rat poison in order to contaminate his First Sergeant's food. *Id.* This evidence rebutted the appellant's claim he made facially innocent requests that, if heeded, could not amount to a criminal offense. Aware of the appellant's murderous intent, the solicitees could not have agreed to purchase rat poison without consciously joining the appellant's criminal venture. Confident the two solicited co-workers could have committed an offense, the CMA concluded the two specifications of solicitation adequately alleged an offense. *Id.* at 199.

---

[3] The four offenses named in Article 82 are desertion, mutiny, misbehavior before the enemy, and sedition. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 6.

Thirty-seven years later, the CMA cited its opinion in *Oakley* for the requirement that a "solicitor's request be such that the solicitee know that the act requested of him is part of a criminal venture." *United States v. Higgins*, 40 M.J. 67, 68 (C.M.A. 1994) (citing *Oakley*, 23 C.M.R. at 199). As in *Oakley*, the solicitation in *Higgins* was a facially innocent request. Higgins stole an ATM card from a fellow Soldier but kept the theft secret when soliciting a friend to withdraw money with the stolen ATM card. Unlike in *Oakley*, the Higgins successfully held his tongue, and the solicited friend withdrew funds with a stolen ATM card in "blissful ignorance." *Id.* Without evidence the solicitee knew he was joining a criminal venture, the CMA found Higgins' plea to solicitation improvident and set aside the conviction. *Id.* at 70.

In 2010, the United States Court of Appeals for the Armed Forces (CAAF) again addressed the crime of solicitation to commit an offense, this time in the context of whether the specification stated an offense. *United States v. Sutton*, 68 M.J. 455 (C.A.A.F. 2010). As in *Oakley*, the CAAF analyzed the case from the perspective of the solicited party. However, the CAAF rejected the argument "that [the Government] need only show that [the solicitee] knew that the solicitation was an invitation to join in a criminal venture." *Id.* at 458. The *Sutton* court determined it must analyze the solicitee's ability to fulfill each element of the solicited offense. *Id.* at 457-59 (citing *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006); *United States v. Dear*, 40 M.J. 196, 197 (C.M.A. 1994)). Sutton was charged with soliciting his 10-year-old stepdaughter to commit indecent acts or liberties with a child by lifting her shirt and showing him her breasts. *Sutton*, 68 M.J. at 456. Stepping through the elements of indecent acts or liberties with a child, Article 134, UCMJ, the CAAF concluded that a child committing an act that amounted to the taking of indecent liberties with herself failed to state an offense. *Id.* at 458-59.

In two cases very similar to *Sutton*, the Air Force Court of Military Review (AFCMR) and this court analyzed whether teenage girls appreciated the nature of acts solicited from them. *United States v. Harris*, No. 9901587, 2003 CCA LEXIS 269 at *3 (N.M.Ct.Crim.App. 26 Nov 2003); *United States v. Conway*, 40 M.J. 859, 862 (A.F.C.M.R. 1994). Although the CAAF implied it would set aside the convictions in *Conway* and *Harris* for the same flaws it found in *Sutton*, it did not directly refute either court's analysis of the solicitees' sense of wrongfulness. *Sutton*, at 458. In both cases cited, the appellant stepfathers were convicted of soliciting their teenage stepdaughters to engage in indecent liberties with a minor by allowing their stepfathers to see them naked. *Conway*, 40 M.J. at 861; *Harris*, 2003 CCA LEXIS 269 at *1. Both courts began

their analyses with the *Higgins* requirement for evidence that "the person solicited knows the act requested is part of some contemplated wrongful conduct." *Conway*, 40 M.J. at 862; *see also Harris*, 2003 CCA LEXIS 269 at *3 (citing *Higgins*, 40 M.J. at 67). From the circumstances surrounding the solicitations, both courts found sufficient evidence to satisfy the knowledge requirement for the two solicited stepdaughters.[4] Similarly, such evidence would shed light on whether the stepdaughters in *Conway* and *Harris* could form the necessary intent to commit the solicited sexual offense.

The case *sub judice* involves the solicitation of minor girls, but the solicited offense differs. The appellant befriended minor girls online, then solicited them to distribute child pornography by taking and sharing sexually explicit photos of themselves. Sometimes the appellant impersonated a teenage girl, and other times he revealed his true identity as a 21-year-old man, but he always solicited in the context of sexting, a practice widely understood in American adolescent culture.[5]

---

[4] In *Conway*, the AFCMR looked at the context of the solicitation in analyzing the solicited teenager's awareness. 40 M.J. at 862. Did the circumstances surrounding the solicitation suggest to the child a proper or an improper purpose for allowing her stepfather to see her naked? The court pointed to Conway's offer to pay his stepdaughter to expose herself to him and his history of sexual abusing her as evidence belying any proper purpose. *Id.* In such an environment, the court believed the stepdaughter could not have attributed her stepfather's request to anything innocent or legitimate. *Id.* The court concluded she had sufficient knowledge to satisfy the knowledge prong of the solicitation under *Higgins*. *Id.* In *Harris,* this court cited three facts as sufficient evidence that a solicited 14-year-old, SL, understood her stepfather's requests of her were wrongful:

> First, SL's practice of covering the key hole to her bedroom door and closing her blinds indicates her desire for privacy. Second, the appellant's statement to SL that he wanted to observe her naked, and the fact that his requests were reiterated through secret written notes clearly communicated to SL that the appellant viewed his request as wrongful. Finally, SL's decision to spurn the appellant's repeated requests, despite his parental authority, provides a sufficient basis for concluding that SL understood that she had no duty to acquiesce in the appellant's request and that, if she did, her conduct would be wrong.

*Harris*, 2003 CCA LEXIS 269 at *4 (citation omitted).

[5] In 2008 and 2009, survey results revealed that somewhere between 5% and 24% of 14 to 17-years-olds sent "sext" messages. Kimberlianne Podlas, The 'Legal Epidemiology' of the Teen Sexting Epidemic: How the Media Influenced a Legislative Outbreak, 12 PGH. J. Tech. L. & Pol'y 1 at ¶¶ 28-34. Intense media coverage of the issue in 2009, fed a popular perception of teen sexting as an "epidemic." *Id.* at ¶ 30.

As the appellant alleges, the record contains no direct evidence that the Jane Does he solicited understood the criminality of the acts he requested of them.  At the beginning of the providence inquiry, the military judge defined solicitation as "any statement or any other act which may be understood to be a serious request to commit the offense of child pornography.  The person solicited must know that the act requested is part of a criminal venture[.]"[6]  The military judge asked the appellant if he understood the elements of the offenses and if they correctly described what he did.  The appellant answered both questions in the affirmative.

In the ensuing colloquy, the military judge asked no questions about the solicited girls' awareness of the criminality or wrongfulness of the appellant's requests.  The stipulation of fact does not address the solicited girls' knowledge of criminality or wrongfulness.  Finally, neither the Government nor the appellant introduced testimony, statements, or other evidence explicitly addressing the solicited girls' awareness of the criminality or wrongfulness of the requested actions.

The appellant relies almost exclusively on *Higgins*, arguing there is insufficient evidence of the solicited parties' knowledge of the appellant's criminal venture.  Unlike *Higgins*, however, this case does not involve a request to perform facially innocent acts with no hint as to the solicitor's nefarious intent.  Although the appellant testified to employing some deception as to his identity, his impersonation of a teenage girl online did not obscure what it was he was requesting: sexually explicit photographs of teenage girls.  Whether the solicited girls thought they were sexting with a fellow teenage girl or a 21-year-old man, they still knew they were sexting.  Ultimately, the appellant's deception of some but not all of the solicited girls is not fatal to his plea.  He still pled to sexting with underage girls using a social media account listing his real name, sex, and age, sending pictures of his naked adult penis, and otherwise withholding nothing about his identity or intentions.

We apply the test the CAAF set forth in *Sutton* and turn our attention to the elements of the solicited offense.  Distribution of child pornography in violation of 18 U.S.C. § 2252A(1), assimilated into the UCMJ under clause 3 of Article 134, criminalizes the acts of those who (1) knowingly (2) mail, transport, or ship, (3) using means or facility in interstate commerce, including by computer, (4) child pornography.  Section 2256 of title 18 defines child pornography to include any visual depiction of a person under the

---

[6] Record at 33.

6

age of 18 years engaging in sexually explicit conduct.  Sexually explicit conduct includes masturbation and the lascivious exhibition of the genitals or pubic area of any person.[7]

The appellant's *modus operandi*, detailed in his stipulation of fact and his providence inquiry, made his pursuit of sexual gratification through sexting clear to the girls he solicited.  The appellant first approached the girls on social networking sites, platforms with no other purpose than to introduce people socially. If a girl responded to the appellant's overtures and conversation progressed, the appellant proposed exchanging phone numbers or messenger user names so they could text and share pictures.  The appellant would then rather bluntly communicate his desire to shift from texting to sexting by sending the girl a picture of his lasciviously exposed genitalia.  Some girls responded with texts that suggested their sexual gratification.  Some reciprocated with sexually explicit photos of themselves.  The appellant sometimes clarified his desires by specifically requesting the girls photograph themselves "[s]tripping, potentially masturbating, touching themselves, posing."[8]  On the other hand, some girls responded by texting, "I don't want to do this."[9]  These girls understood the appellant's proposition and declined the escalation from texting to sexting.  Regardless of whether the girls shared the appellant's desires, they could not help but understand them.  For girls growing up in a culture fascinated with sexting, there could be no confusion as to the nature and purpose of appellant's solicitation.

This evidence allows this court to infer that the solicited girls did or could knowingly transmit visual depictions that amounted to child pornography.  The appellant did not mislead the girls he solicited into distributing child pornography unknowingly. He supplied ample evidence that he clearly communicated the sexual content and context of his requests to the girls he solicited. Engaged in the widely understood social practice of sexting, the girls could meet the elements of the solicited offense of distributing child pornography.[10]  Unlike the solicitation to engage

---

[7] 18 U.S.C. § 2256.

[8] Record at 55.

[9] *Id.* at 43.

[10] Admittedly, many of the solicited Jane Does probably did not equate sexting with child pornography.  Nevertheless, the elements of sexting overlap with those of child pornography, and the *mens rea* of consciously sharing images of a sexually explicit nature is the same.  When first confronted with sexting among teenagers in 2008, some prosecutors threatened to prosecute, or actually did prosecute,

in indecent liberties in *Sutton*, there is no element of 18 U.S.C. § 2252A that poses a practical impossibility in this case. 68 M.J. at 458-59. Despite the appellant's contention that the solicited girls lacked the knowledge of criminality required for a provident plea to solicitation, the solicited girls did possess the awareness necessary to accomplish a violation of the federal child pornography statute and, by assimilation, the UCMJ.

Without a substantial basis in law or fact to question the appellant's guilty plea, we conclude the military judge did not abuse his discretion in accepting appellant's guilty plea to soliciting minor Jane Does to distribute child pornography.

## Conclusion

The findings and the sentence are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

---

sexting teenagers using child pornography laws. Podlas, 12 PGH. J. Tech. L. & Pol'y 1 at ¶¶ 45-50; Patel, 13 J. High Tech. L. 574 at 583-85. Concerns about teenagers being imprisoned and compelled to register as sex offenders for sexting prompted a wave of state legislation. Podlas, at *P75-*P77, *P82-P83; Patel, at 586. New and amended statutes in more than twenty states insulate teens from felony convictions for child pornography. Podlas, 12 PGH. J. Tech. L. & Pol'y 1 at ¶¶ 84-90; Patel, 13 J. High Tech. L. 574 at 586-97; Alexandra Kushner, The Need for Sexting Law Reform: Appropriate Punishments for Teenage Behaviors," 16 U. Pa. J.L. & Soc. Change 281, 288 (2013). While some states merely created new defenses and penalties for child pornography, other states enacted separate misdemeanor offenses for sexting, applicable only to minors and focused on electronic means of distributing child pornography. In Vermont, "[n]o minor shall knowingly and voluntarily and without threat or coercion use a computer or electronic communication device to transmit an indecent visual depiction of himself or herself to another person." 13 V.S.A. § 2802b. In Arizona, "[i]t is unlawful for a juvenile to intentionally or knowingly use an electronic communication device to transmit or display a visual depiction of a minor that depicts explicit sexual material." A.R.S. § 8-309. In Louisiana, a code provision actually entitled "Sexting" directs that, "[n]o person under the age of seventeen years shall knowingly and voluntarily use a computer or telecommunication device to transmit an indecent visual depiction of himself to another person." La. R.S. § 14:81.1.1.