*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
TANG, LAWRENCE, and STEPHENS,
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Reggie W. MURRAY II**
Aviation Boatswain's Mate (Aircraft Handling)
Airman Apprentice (E-2), U.S. Navy
Appellant

**No. 201800163**

Decided: 5 December 2019.

Appeal from the United States Navy-Marine Corps Trial Judiciary. Military Judge: Captain Ann K. Minami, JAGC, USN. Sentence adjudged 22 March 2018 by a special court-martial convened at Naval Base Kitsap-Bremerton, Washington, consisting of a military judge sitting alone. Sentence approved by the convening authority: reduction to pay grade E-1, confinement for 10 months, and a bad-conduct discharge.

For Appellant: Major James S. Kresge, USMCR.

For Appellee: Major Kerry E. Friedewald, USMC; Lieutenant Joshua C. Fiveson, JAGC, USN; Lieutenant Jonathan Todd, JAGC, USN; Major Kelli A. O'Neil, USMC.

Senior Judge TANG delivered the opinion of the Court, in which Judge STEPHENS joined. Judge LAWRENCE filed a separate dissenting opinion.

_____

**This opinion does not serve as binding precedent,
but may be cited as persuasive authority under
NMCCA Rule of Practice and Procedure 30.2.**

———————————————

TANG, Senior Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with his pleas, of one specification of violating a lawful general regulation and one specification of making a false official statement in violation of Articles 92 and 107, Uniform Code of Military Justice (UCMJ).[1]

In his sole assignment of error, Appellant contends his sentence was inappropriately severe. We additionally directed the Government to show cause why this Court should find the military judge did not abuse her discretion by accepting Appellant's plea of guilty to violation of a lawful general regulation (sexual harassment in violation of Navy Regulation) under the Specification of Charge I. After reviewing the parties' briefs on the issue, we find that the military judge abused her discretion by accepting Appellant's guilty plea to the Specification of Charge I. We take appropriate action in our decretal paragraph, rendering Appellant's assignment of error moot.

## I. BACKGROUND

### A. Appellant's Misconduct

Appellant met Petty Officer A while both served aboard USS JOHN C. STENNIS (CVN 74) in different departments. They became friends and later dated for a period of months. On one occasion, Appellant asked Petty Officer A for her permission to video record one of their consensual sexual encounters with his cell phone. She agreed on the condition that he "would not show it to other people, but only keep it for [him]self."[2] Appellant also took two other sexually explicit videos of Petty Officer A performing fellatio which, according to Petty Officer A, she was unaware that Appellant made.

After the couple amicably ended their relationship, Appellant decided a month later to create an anonymous profile and post the three sexually explicit videos for public viewing on a pornography sharing website. He did not

———————————————

[1] 10 U.S.C. §§ 892, 907 (2016).

[2] Prosecution Exhibit (PE) 1 at 2.

identify himself in the videos. However, he specifically identified Petty Officer A in all three videos by her full first and last name and, in the two videos depicting fellatio, also indicated that she was in the Navy. Petty Officer A was not aware that Appellant posted these videos. However, she soon learned the videos were posted with her full name when people began contacting her via social media applications. Eventually, someone sent her a link to the videos. Petty Officer A suspected Appellant posted the videos, and she made a complaint to the ship's security department. The case was turned over to the Naval Criminal Investigative Service (NCIS).

When NCIS agents asked Appellant where his cell phone was, he lied to them. This misconduct formed the basis for the false official statement charge under Specification under Charge II. Appellant was also charged with two specifications alleging violations of Article 120c[3] for wrongfully making sexually explicit videos of Petty Officer A without her consent and one specification of Article 134 for obstruction of justice. Pursuant to a pretrial agreement, these three specifications were withdrawn and dismissed without prejudice, with such dismissal to ripen into prejudice upon completion of appellate review in which the findings and the sentence are upheld.

**B. The Military Judge's Colloquy**

The Specification of Charge I alleges Appellant violated the U.S. Navy Regulations, Article 1166 (1990)[4] in that he "wrongfully commit[ed] sexual harassment when he posted sexually explicit videos of [Petty Officer A] on [a pornographic website], which had the effect of creating a hostile work environment."[5] The military judge began her colloquy on this specification by listing and defining the elements of Article 92—violating a lawful general order or regulation. Although the specification alleged a violation of U.S. Navy Regulations, Article 1166, that regulation was not appended to the record. The regulation does not define sexual harassment, and the military judge did not define sexual harassment during her colloquy.

When the military judge asked Appellant to tell her in his own words why he was guilty of the Specification of Charge I, he replied, "I committed sexual harassment by posting the videos online, therefore allowing other members of

---

[3] 10 U.S.C. § 920c (2012).

[4] With Change 1.

[5] Charge Sheet.

her work center to see the videos and, therefore, subject—subjugate her to sexual harassment."[6]

The military judge engaged in the following exchange with Appellant regarding his understanding of Article 1166:

MJ: And what do you understand that regulation to say?

ACC: I understand that it prohibits sexual harassment in the workplace, Your Honor.

MJ: Okay. And what do you understand sexual harassment to be?

ACC: Sexual harassment is any actions that could lead to any person feeling uncomfortable sexually in the workplace or anywhere, Your Honor.

MJ: And you read and you've also discussed this U.S. Navy regulation with your counsel?[7]

Appellant indicated that he had. The military judge later asked:

MJ: All right, so how did you violate this Navy regulation?

ACC: I violated the Navy regulation by posting the videos online and, therefore, allowing them to be seen by people in her work center and, therefore, causing her a hostile work environment.[8]

Appellant stated he knew that Sailors from USS JOHN C. STENNIS saw the video, but he only knew this happened because the NCIS special agent told him so.

Then the military judge engaged in this exchange:

MJ: So how do you think your posting that video on that website, how do you think that created a hostile working environment for [Petty Officer A]?

ACC: Because her most intimate moments were there for— available so—for other eyes to see.

---

[6] Record at 21.

[7] *Id.* at 22.

[8] *Id.* at 23.

MJ:        Were you aware that her shipmates saw the video?

ACC:      Yes—yes, Your Honor.

MJ:        And you understand her shipmates talked to her about it?

ACC:      Yes, Your Honor.[9]

When asked where she was when her shipmates talked to her, Appellant said, "I didn't know exactly where the Sailors confronted her about it, but I do know that Sailors found out about it."[10]

The military judge then asked whether Appellant believed his actions constituted sexual harassment, to which he replied that he did.

The stipulation of fact included the sentence, "I admit that the videos themselves depict sexual acts and, as viewed, the release of this content in the work center would constitute sexual harassment."[11]

## II. DISCUSSION

### A. Standard of Review

"[A]n accused cannot plead 'guilty to conduct that was not criminal.'"[12]

Before accepting a guilty plea, a military judge must ensure the plea is supported by a factual basis.[13] The military judge must elicit sufficient facts to satisfy every element of the offense in question.

On appeal, we review a military judge's decision to accept a plea of guilty for an abuse of discretion.[14] Questions of law arising from the guilty plea are reviewed de novo.[15] A reviewing appellate court may only reject a guilty plea

---

[9] *Id.* at 25.

[10] *Id.* at 26.

[11] PE 1 at 2.

[12] *United States v. Tucker*, 78 M.J. 183, 186 (C.A.A.F. 2018) (quoting *United States v. Ferguson*, 68 M.J. 431, 433 (C.A.A.F. 2010)).

[13] Article 45(a), UCMJ; *see also United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969); RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) (R.C.M.).

[14] *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (quoting *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996)).

[15] *See id.* (quoting *United States v. Pena*, 64 M.J. 259 (C.A.A.F. 2007)).

if there is a substantial basis in law or fact, based on the entire record of trial, to question the plea.[16]

In *United States v. Inabinette,* our superior court wrote:

> There exist strong arguments in favor of giving broad discretion to military judges in accepting pleas . . . . As a result, in reviewing a military judge's acceptance of a plea for an abuse of discretion appellate courts apply a substantial basis test: Does the record as a whole show "'a substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater,* 32 M.J. 433, 436 (C.M.A. 1991).

> Traditionally, this test is presented in the conjunctive (i.e., law *and* fact) . . .; however, the test is better considered in the disjunctive (i.e., law *or* fact). That is because it is possible to have a factually supportable plea yet still have a substantial basis in law for questioning it. This might occur where an accused knowingly admits facts that meet all the elements of an offense, but nonetheless . . . states matters inconsistent with the plea that are not resolved by the military judge. At the same time, where the factual predicate for a plea falls short, a reviewing court would have no reason to inquire de novo into any legal questions surrounding the plea.[17]

The inquiry is sufficient "if 'the factual circumstances as revealed by the accused himself objectively support that plea.'"[18] We evaluate this question "in terms of the providence of his plea, not sufficiency of the evidence."[19]

When a military judge makes a ruling—including the decision to accept a guilty plea—based on an erroneous view of the law, she abuses her discretion.[20]

---

[16] *Id.* (quoting *United States v. Prater,* 32 M.J. 433 (C.M.A. 1991)).

[17] *Id.*

[18] *United States v. Markert*, 65 M.J. 677, 680-81 (N-M Ct. Crim. App. 2007) (quoting *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996)).

[19] *Id.* at 681.

[20] *United States v. Simpson*, 77 M.J. 279, 282 (C.A.A.F. 2018) (citing *United States v. Passut*, 73 M.J. 27 (C.A.A.F. 2014)).

**B. Analysis**

We have a substantial basis in law and fact to question the providence of Appellant's plea. First, Appellant mis-defined sexual harassment and the military judge did not correct him. Second, the facts he admitted do not establish Appellant's guilt under the appropriate definition of sexual harassment. As a result of these errors, on the basis of the entire record, we find the military judge abused her discretion by accepting Appellant's guilty plea.

*1. Definition of sexual harassment*

A military judge abuses her discretion when she provides—or relies upon—legally incorrect definitions.[21]

Appellant defined sexual harassment as "any actions that could lead to any person feeling uncomfortable sexually in the workplace or anywhere."[22]

In *United States v. Olivares*,[23] considering an appeal taken under Article 62, this Court held that U.S. Navy Regulations, Article1166 is a punitive regulation and it is not unconstitutionally vague. In that opinion, we chronicled the definitions of sexual harassment used in the Navy. We wrote that, when the 1990 Navy Regulations were first issued, the Navy had already defined sexual harassment in 1988 as:

> A form of sex discrimination that involves unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when:
>
> a. Submission to such conduct is made either explicitly or implicitly a term or condition of a person's job, pay, or career, or
>
> b. Submission to or rejection of such conduct by a person is used as a basis for career or employment decisions affecting that person, or

---

[21] *See id.* at 282-84.

[22] Record at 22.

[23] No. 201800125, 2019 CCA LEXIS 97 (N-M. Ct. Crim. App. 7 Mar. 2019) (en banc) (per curiam) (unpub. op.). Although we decided *Olivares* after the military judge accepted Appellant's guilty plea, the underlying instructions we quoted were available to the military judge to formulate her providence inquiry.

c. Such conduct has the purpose or effect of unreasonably interfering with an individual's performance or creates an intimidating, hostile, or offensive environment.

Any person in a supervisory or command position who uses or condones any implicit or explicit sexual behavior to control, influence, or affect the career, pay, or job of a military member or civilian employee is engaging in sexual harassment. Similarly, any military member or civilian employee who makes deliberate or repeated unwelcome verbal comments, gestures, or physical contact of a sexual nature is also engaging in sexual harassment.[24]

We further observed that, since 1988, "[t]he definition of sexual harassment has changed little in either the relevant [Department of Defense] or Secretary of the Navy Instructions," although the Secretary of the Navy "has clarified that sexual harassment takes place in the expansively understood workplace."[25]

The current Department of the Navy Policy on Sexual Harassment governed Appellant's conduct. In the portion pertinent to this case, it defines sexual harassment as:

A form of sex discrimination that involves unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when:

. . . .

c. Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile or offensive working environment. This definition emphasizes that workplace conduct, to be actionable as "abusive work environment" harassment, need not result in concrete psychological harm to the victim, but rather need only be so severe or pervasive that a reasonable person would perceive, and the victim does perceive, the work environment as hostile or offensive. ("Workplace" is an expansive term for military members and may include conduct on or off duty, 24 hours a day.) Any person in a supervisory or command position who

---

[24] *Olivares*, 2019 CCA LEXIS 97, at *7-8.

[25] *Id.* at *9.

uses or condones any form of sexual behavior to control, influence, or affect the career, pay, or job of a military member or civilian employee is engaging in sexual harassment. Similarly, any military member or civilian employee who makes deliberate or repeated unwelcome verbal comments, gestures, or physical contact of a sexual nature in the workplace is also engaging in sexual harassment. [26]

The same instruction defines the work environment as:

The workplace or any other place that is work-connected, as well as the conditions or atmosphere under which people are required to work. Examples of work environment include, but are not limited to, an office, an entire office building, a DoD base or installation, DoD ships, aircraft or vehicles, anywhere when engaged in official DON business, as well as command-sponsored social, recreational and sporting events, regardless of location. [27]

The instruction Appellant provided—and the military judge accepted—was legally incorrect whether measured against the instruction in effect at the time of the issuance of the Navy Regulations Article or when compared to the current Navy instruction. At its core, sexual harassment requires: (1) an *act* of a particular nature, such as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature; and (2) an *attendant circumstance* linking that act to harassment to the workplace—in the Appellant's case, he was charged with such conduct having the *effect* of creating a hostile work environment. The conduct must be "so *severe* or *pervasive* that a reasonable person would perceive, and the victim does perceive, the work environment as hostile or offensive."[28] That is, the victim must subjectively believe the workplace is hostile and this perception must be objectively reasonable.

We find the military judge erred by failing to provide the proper definition of sexual harassment and permitting Appellant's erroneous definition to pervade the providence inquiry. We next evaluate the record to determine whether, in spite of the erroneous definition, Appellant still admitted to suffi-

---

[26] Secretary of the Navy Instruction 5300.26D, Encl. 1, at 1-2 (3 Jan. 2006).

[27] *Id.* at 2.

[28] *Id.* at 1.

cient facts to satisfy the offense of sexual harassment such that acceptance of his guilty plea did not constitute an abuse of discretion.

*2. Lack of facts when considering the proper definition of sexual harassment*

Even though the military judge permitted Appellant to use an incorrect definition, if we can still find that the facts Appellant admitted constitute sexual harassment, we might find a basis to affirm the guilty plea.

This Court has held that Article 1166 is not overbroad because sexual harassment has been consistently defined from 1988 to the present day. We apply the SECNAVINST 5300.26D definition. On its face, this instruction requires that Appellant's actions must have "involve[d] unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." Appellant's actions online do not involve "verbal or physical conduct of sexual nature." Even in the broadest interpretation of this language, Appellant's actions, though abhorrent, do not fit this definition.

Enclosure (2) to SECNAVINST 5300.26D provides an *even broader* treatment of sexual harassment, defining it as "*behavior* that is unwelcome, sexual in nature, and connected in some way with a person's job or work environment."[29] The word "*behavior*" is not defined in the instruction, but its common definition refers to "the way in which someone conducts oneself or behaves."[30] The use of the word "behavior" implies the harassment must be an act a person commits in the workplace. Even under this broader definition, Appellant did not admit sufficient facts to satisfy the definition of sexual harassment.

This enclosure also lists a range of non-exhaustive examples of conduct that might constitute sexual harassment. Under "yellow light behavior"—behavior that *may* be sexual harassment—these examples are listed and further amplify our belief that Appellant's act falls outside the definition of sexual harassment:

> violating personal space, whistling, questions about personal life, lewd or sexually suggestive comments, suggestive posters or calendars, off-color jokes, leering, staring, repeated requests

---

[29] *Id.*, Encl. 2, at 1 (emphasis added).

[30] *Behavior,* Merriam-Webster Dictionary, https://merriam-webster.com/dictionary/behavior (last visited 26 Nov. 2019).

for dates, foul language, unwanted letters or poems, or sexually
suggestive touching or gesturing.[31]

The act of posting Petty Officer A's videos, including her name and the
word "Navy" to identify her as a likely Sailor, does not fall within the acts
proscribed by the instruction.

Even if we could find Appellant committed an act, we also find there is
substantial reason to question whether Appellant's guilty plea satisfied the
requirement that his act had the effect of creating a hostile work environ-
ment for Petty Officer A. The only facts he provided to that point were that:

(1) Appellant made the videos *available* to the entire world, including Pet-
ty Officer A's shipmates, by specifically identifying her by name and Navy
affiliation; and

(2) Some of Petty Officer A's shipmates saw the videos and talked to her
about them;

(3) Appellant's actions caused pain to Petty Officer A;

(4) Appellant believes his actions constituted sexual harassment—at least
as he understood the term.

Although Appellant stated that Petty Officer A's shipmates "confronted"
her, he provided no facts to describe what happened. Nor did he describe any
interactions that would permit the military judge to find that Petty Officer A
was subjected to a work environment that a reasonable person would view as
"hostile."[32]

Appellant was not in Petty Officer A's workplace, and he did nothing *in
her workplace* to make it hostile. Her workplace would have been made hos-
tile only if Sailors *in her workplace* committed acts against her. That Appel-
lant gave Petty Officer A's shipmates potential fodder they could choose to
wrongfully use *to harass* Petty Officer A does not mean Appellant sexually
harassed Petty Officer A.

Even considering the "expansive" workplace intended by the instruction,
which "*may* include conduct on or off duty, 24 hours a day," the touchpiece of
the workplace is that it is "work-connected." Unless every Sailor's interaction
with every other Sailor is necessarily work-connected, these interactions are
not. We do not interpret the workplace so expansively as to involve every in-

---

[31] SECNAVINST 5300.26D, Encl. 2, at 3.

[32] Record at 25-26.

teraction between two Sailors—including shipmates in different departments on an aircraft carrier with a crew of thousands.

Here, if anyone was harassing Petty Officer A *in her workplace,* it was not Appellant. We find the military judge did not establish a factual basis that Appellant *created,* or *caused*, a hostile workplace for Petty Officer A. While his act in posting the videos allowed other Sailors to view the videos of Petty Officer A, the military judge did not elicit facts from Appellant to show that Appellant could reasonably be held criminally liable for the acts of other Sailors who may have made Petty Officer A's workplace hostile.

Our superior court has recognized the concept of proximate causation. The issue of proximate causation can arise, for example, when a court-martial must determine *whether* an accused caused injury while driving drunk. In *United States v. Lingenfelter,*[33] the Court of Military Appeals held that "the prosecution is required to prove that [the appellant's] conduct was the 'proximate cause' of the fatal injury," and it rejected the Government's argument that it "need only prove that appellant's conduct was a cause-in-fact of the injuries." The court held that if cause-in-fact were sufficient, "then circumstances and occurrences totally outside the range of foreseeability and culpability would expose servicemembers to higher levels of punishment."

The Military Judge's Benchbook contains an instruction relating to proximate causation as a defense.[34] One instruction covers situations in which proximate causation is at issue. It states that the result "must have been the natural and probable result of the accused's" action.[35] Furthermore, "[a] proximate cause does not have to be the only cause, nor must it be the immediate cause. However, it must be a direct or contributing cause that plays a material role, meaning an important role, in bringing about" the resulting harm.[36]

The military judge made no inquiry into causation or why Appellant believed *he created* or *caused* any resulting hostile work environment. She did not elicit any statements about Appellant's intentions or whether he believed a hostile work environment would be a "natural and probable result" of his actions. The Appellant's sole statement on the point was that he "post[ed] the

---

[33] 30 M.J. 302, 306 (C.M.A. 1990).

[34] Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 5-19 (10 Sep. 2019).

[35] *Id.* at n.3.

[36] *Id.*

videos online and, therefore, allow[ed] them to be seen by people in her work center and, therefore, causing her a hostile work environment."[37] On balance, although Appellant admitted he committed the offense of sexual harassment, as he understood it, we find his admission to this vital aspect of the offense to be conclusory. "It is not enough to elicit legal conclusions. The military judge must elicit facts to support the plea of guilty."[38]

We believe this Court's opinion in *United States v. Peszynski* is instructive:

> To constitute sexual harassment under Navy policy, the behavior must not only be of a certain nature, it must also *cause* a certain *result*, namely, interference with the victim's job performance or creation of a "hostile" working environment. Those key features of sexual harassment are at least standards that can be measured objectively. Furthermore, they appear to support the inference that the policy is limited to the military workplace . . . .[39]

In *Peszynski*, the Court found that harassment of a fellow servicemember while working off-duty at an on-base civilian fast food restaurant was not sufficiently connected to the military workplace to constitute sexual harassment under Navy policy.[40] We apply the same reasoning to reach a similar conclusion here, noting that conduct that is "merely offensive in a moral or social sense" is not criminal unless it meets the elements of the offense.[41]

We do not hold that the act of wrongfully publishing sexually explicit videos could *never* constitute the offense of sexual harassment, merely that the facts as elicited by the military judge's inquiry do not establish the providence of Appellant's guilty plea to the offense. Evaluating the record as a whole, nothing in the remainder of the record alleviates our substantial basis to question the providence of Appellant's guilty plea. The prosecution exhibits focus on Appellant's actions in posting the videos to the pornographic web-

---

[37] Record at 23.

[38] *United States v. Jordan,* 57 M.J. 236, 238 (C.A.A.F. 2002) (citing *United States v. Outhier,* 45 M.J. 326, 331 (1996)).

[39] *United States v. Peszynski*, 40 M.J. 874, 881 (N.M.C.M.R. 1994) (emphasis in original).

[40] *Id.*

[41] *See id.* at 882 n.10.

site—not the effect of the videos on Petty Officer A's workplace. Petty Officer A submitted a statement pursuant to R.C.M. 1001A, the contents of which do not alleviate our concerns.[42]

For the reasons described above, we find there is a substantial basis in law and fact to question the providence of Appellant's guilty plea. We set aside the guilty finding.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, the finding of guilty to the Specification of Charge I is **SET ASIDE.** The finding of guilty to the Specification of Charge II is **AFFIRMED.** A rehearing is authorized. Alternatively, the convening authority may approve a sentence of no punishment.[43] The record of trial is returned to the Judge Advocate General for action consistent with this opinion.

Judge STEPHENS concurs.

---

[42] Appellate Exhibit IV contains the following additional facts relating to Petty Officer A's interactions with other Sailors:

(1) Some of the people who sent her social media messages after seeing the videos were themselves Sailors—though it is unknown whether they were from her ship or from other commands;

(2) "I was approached by several shipmates at my command who had seen or heard about the video. They would ask me if I'd seen it and what I was going to do."

(3) After she reported Appellant's acts to law enforcement, "The rumors still spread and I was still approached by people about the video."

[43] Unless the convening authority approves a sentence of no punishment without a rehearing, at any such rehearing, Appellant must be afforded the opportunity to once again plead guilty to the Specification of Charge I in compliance with the pretrial agreement between Appellant and the convening authority. If the military judge accepts Appellant's provident plea, all terms in the pretrial agreement shall remain binding on the convening authority. If Appellant changes his plea or the military judge refuses to accept his plea of guilty to the Specification of Charge I, the pretrial agreement will become null and void. In such a case, subject to any statutes of limitations applicable to the specifications of Charge III and IV, the convening authority may re-refer the specifications of Charge III and IV to a special court-martial, to be tried along with the Specification of Charge I. In the alternative, the convening authority may elect to hold a rehearing on sentencing only on the Specification of Charge II.

LAWRENCE, Judge (dissenting):

I disagree with the majority's resolution of the specified issue. As a result, I would affirm the decision of the trial court below in its entirety.

Only earlier this year, this Court sitting en banc found that this same U.S. Navy Regulations, Article 1166, was indeed punitive in nature.[1] Specifically, we noted that "[t]he Secretary of the Navy has clarified that sexual harassment takes place in the expansively understood workplace"[2] with the "workplace" itself constituting "an expansive term for military members [that] may include conduct on or off duty, 24 hours a day."[3]

The "core" of the majority's two-part test for sexual harassment was satisfied by Appellant's actions and his plea.[4] While Appellant's acts in posting these explicit videos with the victim's name and shorthand sexual references to her would have been repugnant, that alone would not necessarily involve the workplace sufficient to constitute an offense. However, when Appellant directly applied a label to each of the oral sex videos that now also indicated that this was a Navy Sailor, he provided an unmistakable connection to the 24 hours a day, 7 days a week worldwide workplace. In doing so, he unreasonably interfered with her work performance on her ship and elsewhere. He admitted that *he* subjected this Sailor—in the most graphic and offensive manner—to harassment and humiliation.[5] Moreover, considering the precise manner in which Appellant identified his victim in the online medium he chose, he guaranteed future searches of her name and Navy background would result in family, friends, coworkers or future employers encountering Appellant's derogatory shorthand for her purported willingness to partake in intimate acts, and videos of her performing sex acts.

In agreeing to a PTA, Appellant received a substantial benefit when the Government in turn withdrew and dismissed the Article 120c, UCMJ, charge and specifications. Had this instead proceeded to contested trial, not only would Appellant be in jeopardy of additional convictions, ones that carry a far

---

[1] *United States v. Olivares*, No. 201800125, 2019 CCA LEXIS 97 (N-M. Ct. Crim. App. 7 Mar. 2019) (en banc) (per curiam) (unpub. op.).

[2] *Id.* at *9.

[3] Secretary of the Navy Instruction 5300.26D, Encl. 1 at 1 (3 Jan. 2006).

[4] Majority Opinion at *9.

[5] Record at 21.

greater risk of his home state requiring him to register as a sex offender than for an orders violation, but his victim would necessarily have testified on the merits. In doing so, she would have potentially provided further detail about the manner and degree of confrontation and continuing harassment she encountered on her ship about these explicit sex videos—there were numerous reasons why Appellant might make this "conscious choice to plead guilty" that also resulted in leaving some facts undeveloped.[6] While Appellant himself admitted to the confrontation *his* harassment caused aboard her ship, the majority opinion parses through the "traffic light" to lament a sex video is nowhere to be found in the admittedly non-exhaustive examples of sexual harassment. To me, this is obvious and I stand with the military judge in apparently "know[ing] it when I see it" in this context as well.

In review of the entire record, Appellant further expressed regret and apologized to his victim in his unsworn statement. He admitted causing her "a horrible embarrassment" by posting the intimate videos, allowing them to be "copied and distributed on other websites and spread like cancer throughout the world."[7] But the victim's fears expressed through her impact statement had already been borne out by the spread of these videos and likely regeneration throughout the *worldwide* web given the well-known legacy of such a posting. Notably, he also admitted that "[t]he Navy is a victim here, too. The Navy tries its best to stop sexual harassment and create[ ] a work center free of harassment, but I know after listening to [the victim's] suffering, the good order and discipline of the Navy is also harmed."[8]

In her interview with NCIS, the victim said that she gave no consent to Appellant to record the videos showing her performing fellatio on Appellant. She also confirmed that she gave no consent to sharing or distributing *any* of the three videos made by Appellant.[9] When NCIS performed a basic search on the most prominent general search engine using "Navy" along with the victim's full name and nothing else, six of the top seven search results revealed this video collection of the victim on pornographic video sites, the other was to a story in the local newspaper discussing the victim and her ship setting off on a "tiger cruise" with friends and family.

---

[6] *See United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

[7] Record at 51.

[8] *Id*. at 52.

[9] PE 5 at 1.

Beyond the confrontation in the work center that Appellant admitted he caused, the victim expressed the humiliating nature of Appellant's action and lamented her inability to let her family know about this incident, lest it "break their heart to know that a shipmate would do this to [her]."[10]

While the military judge's colloquy with Appellant may not have been as probing as might be ideal, I believe Appellant was sufficiently informed and versed in sexual harassment and adequately described how he committed this offense; I would respect the military judge's decision to accept his plea. I too agree with my colleagues in the majority that greater reliance by the military judge upon the guidance provided by the Military Judge's Benchbook would have been preferable. But on the question of what the *law requires*, I find Appellant's plea to be satisfactory given the specificity in which he labeled his posting of explicit sex videos of his victim.

The majority's discussion of *United States v. Lingenfelter*[11] is curious. Not only is it an example of an extensively litigated contested case with experts as opposed to a guilty plea, but one need only look lines down from the majority's quote concerning the government argument the Court of Military Appeals *rejected* in that case. Instead, the Court clarified: "To be proximate, an act need not be the sole cause . . . , nor must it be the immediate cause-the latest in time and space preceding . . . . But a contributing cause is deemed proximate only if it plays a material role . . . . Further, an intervening cause excuses an accused from his criminally-negligent conduct when the second act of negligence looms so large in comparison with the first, that the first is not to be regarded as a substantial factor in the final result."[12] Here, Appellant indeed played a material role in the sexual harassment of the victim and the subsequent acts of the Sailors in confronting the victim with the explicit videos hardly superseded Appellant's actions as the most substantial factor in the sexual harassment.

Despite the majority's assertion, I find it unreasonable to suggest that, without the complete development of issues inherent in an appellant's choice to enter a guilty plea, a confrontation by shipmates about graphic sex acts being captured on an internet video posted by Appellant could ever be construed as a welcome topic of conversation. The Appellant made clear that *he created* just such a hostile work environment by sharing his victim's "most

---

[10] AE IV at 1.

[11] 30 M.J. 302 (C.M.A. 1990).

[12] *Id*. at 307 (citations omitted).

intimate moments"—her face prominent on the videos as she performed oral sex on him—posted in such a precisely-identified manner linking her to the Navy that then and for the foreseeable future would invite similar confrontations, perpetuating Appellant's sexual harassment. Appellant knew that she perceived it as unwelcome and it caused her pain. Appellant believed he committed sexual harassment and I agree that the military judge acted within her broad discretion to accept his guilty plea.

Accordingly, I dissent.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court